**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**WEI-PING ZENG,**

      **Plaintiff,**

**v.**                             **Case No.: 3:17-cv-03008**

**MARSHALL UNIVERSITY,**

      **Defendant.**


**<u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>**

On May 23, 2017, Plaintiff Wei-ping Zeng ("Zeng"), proceeding *pro se*, filed a complaint alleging unlawful employment practices that culminated in his discharge from Marshall University's School of Medicine ("MUSOM"). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently at issue are Defendant's Motion to Dismiss, (ECF No. 17), Defendant's Motion to Strike Plaintiff's Second Response to Defendant's Motion to Dismiss, (ECF No. 26), and Plaintiff's Motion to File a Surreply Memorandum, (ECF No. 27). Although the filing of a surreply memorandum is generally disfavored and should not become a routine practice, the undersigned finds good cause to allow the memorandum in this circumstance. Therefore, Plaintiff's Motion to File a Surreply Memorandum is **GRANTED**, and Defendant's Motion to Strike is **DENIED**. The surreply memorandum

has been considered in preparing this PF&R.

This issues raised in Defendant's Motion to Dismiss have been fully briefed by the parties, and the undersigned finds no need for oral argument. For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**, in part, and **DENY**, in part, the Motion to Dismiss.[1]

## I.    Relevant Facts as Alleged in the Complaint

Zeng is a naturalized United States citizen, originally from China. On September 1, 2009, he commenced employment with MUSOM as an Associate Professor in the Department of Biochemistry and Microbiology. When employed, Zeng understood that he would be on a tenure track. MUSOM policy stipulated that at the time of appointment each probationary faculty member was to be provided with the requirements and guidelines for tenure, including any requirements specific to the faculty member's department. Notwithstanding this policy, Zeng was not provided with tenure requirements or guidelines that applied specifically to his department. Three years later, in a mid-tenure review, Zeng was advised that he was expected to obtain external research funding in order to qualify for tenure. According to Zeng, external research funding is not a standard tenure requirement of MUSOM, and this was the first time he was notified in writing that external funding was mandatory in his department.

In October 2015, Zeng submitted an application for tenure to the Department of Biochemistry and Microbiology's promotion and tenure committee ("P&TC"). Prior to and at the time of his application, Zeng was exceeding departmental standards in all of his primary job responsibilities; including teaching, research, publication, and service.

---

[1] The undersigned notes that Zeng recently filed a Motion to Amend the Complaint, (ECF No. 28), and a Motion for a Change of Venue, (ECF No. 30), neither of which is ripe for resolution at this time. Accordingly, this PF&R pertains only to Defendant's Motion to Dismiss the Complaint.

Despite his achievements, Zeng's application for tenure was denied on April 30, 2016. One reason given for the denial was Zeng's inability to obtain external research funding.

Zeng alleges that his application was denied not because of any real shortcomings on his part, but because of his race and national origin. Zeng contends that MUSOM places higher standards for tenure on Asian faculty members—such as requiring them to obtain external research funding. Zeng claims that external research funding is particularly difficult, if not impossible, to obtain given the current climate, MUSOM's disadvantage in any competition for research funding, and MUSOM's lack of technical support. Zeng asserts that, as a result, the only two Asians recommended for tenure by his department's interim chair were exceptionally successful faculty members, who won prestigious awards and were ranked in the upper 5%-10% of faculty members at MUSOM.

In contrast, Zeng points to two Caucasian colleagues in MUSOM's Department of Biochemistry and Microbiology, who joined the department years after Zeng, but received tenure before consideration of Zeng's application. According to Zeng, these colleagues carried comparable class loads to Zeng, but received lower evaluation scores from their students. They had fewer publications than Zeng, and they were published in less recognized scientific journals. Moreover, Zeng obtained a provisional patent on behalf of MUSOM, self-initiated a service project that greatly improved the library's literature search function, and participated in sixteen national and international scientific communities, all accomplishments that surpassed those of his Caucasian colleagues. Nevertheless, Zeng claims that both Caucasian colleagues were paid more than him; one colleague was awarded tenure despite having no external research funding; and the other colleague was given credit toward tenure for external funding that MUSOM had received every year since 2004.

Zeng claims that on February 8, 2016, the Dean of MUSOM sent him a decision letter, indicating that the P&TC and the Dean were recommending to the University's President that Zeng's application for tenure be denied. At the Dean's suggestion, Zeng met with him on February 22, 2016 to discuss the negative recommendation. During this meeting, the Dean offered to allow Zeng to continue working through June 2017, although his contract was scheduled to terminate in February 2017, if Zeng agreed not to challenge the tenure decision. The Dean added, however, that if Zeng made "a fuss" about the decision, his employment would end in June 2016. According to the Dean, he had discussed the proposal with the University's President, who agreed to the compromise. The offer was reiterated to Zeng by the interim chair of his department on March 16, 2016. Ignoring the offer, Zeng wrote a letter to the University's President, asking him to reconsider the negative decision.

When Zeng did not hear from the President, he filled out an EEOC questionnaire on March 21, 2016, complaining of racial discrimination in the tenure decision, as well as retaliation for complaining about the discrimination. Approximately one month later, Zeng received a telephone call from the EEOC asking him if he wanted to file a formal charge against MUSOM. On April 30, 2016, Zeng was officially notified by the University's President that his application for tenure was denied. On May 5, 2016, Zeng received an email from the University's associate general counsel, again offering to allow Zeng to work at MUSOM until February 2017 if he abandoned his EEOC charge and brought no further claim against MUSOM for denying his tenure application. On May 20, 2016, Zeng filed a grievance with the West Virginia Public Employees Grievance Board ("PEGB"). On June 30, 2016, Zeng's employment with MUSOM was terminated.

## II.    Causes of Action Asserted by Zeng

Zeng includes four counts in his complaint. First, he alleges discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* Zeng contends that the decision to deny him equal pay and tenure was improperly motivated by discrimination on the basis of national origin (Chinese) and race (Asian). In his second count, Zeng claims that MUSOM retaliated against him in violation of Title VII and 42 U.S.C. § 1981. According to Zeng, his employment was terminated prematurely because he refused to abandon his right to challenge MUSOM's discriminatory employment practices. Third, Zeng alleges unlawful discrimination in violation of West Code § 6C-2-2(l), stating that members of the P&TC committee, the Dean, and the interim chair of Zeng's department distorted evidence submitted in support of his tenure application, intentionally downgraded his accomplishments, and denied him equal pay and tenure. Finally, Zeng asserts a claim for retaliation under West Virginia Code § 6C-1-1, et seq., the West Virginia Whistle-blower's Act.

## III.    Motion to Dismiss

MUSOM asserts four grounds in support of its Motion to Dismiss the Complaint. First, MUSOM argues that Zeng failed to exhaust his administrative remedies; therefore, this Court lacks subject matter jurisdiction over his complaint. MUSOM indicates that Zeng filed a grievance with PEGB, which is still making its way through the process. Because filing a grievance with PEGB is the exclusive mechanism for public employees to raise alleged employment wrongs, the process must be fully exhausted before Zeng can resort to the courts.

As its second ground, MUSOM asserts immunity from litigation under the Eleventh Amendment to the United States Constitution. In its supporting memorandum,

MUSOM supplies citations to various state and federal decisions confirming that MUSOM is an agency of the State of West Virginia. MUSOM argues that its sovereign immunity bars lawsuits against it unless an exception applies, and no exceptions apply in this case.

Next, MUSOM contends that decisions relating to tenure are reserved to "academic professionals" and are subject to limited judicial review. MUSOM argues that Zeng's race and national origin played no part in the decision to deny him tenure, as is clearly indicated by the documents referenced in the complaint and submitted by MUSOM. MUSOM also challenges Zeng's allegation that his contract of employment was terminated prematurely, stating that the contract expired at the end of the State's 2016 fiscal year as originally intended.

In response, Zeng claims his grievance to the PEGB does not preclude subject matter jurisdiction in this case, because his claims here involve human rights violations that do not require administrative exhaustion. In any event, Zeng indicates that he has now exhausted the grievance process, having received a negative ruling by an Administrate Law Judge. Zeng adds that his EEOC claim has also been exhausted, as he received a right-to-sue letter on February 23, 2017.

With respect to sovereign immunity, Zeng argues that the State of West Virginia waived its sovereign immunity in matters involving human rights violations by including the State within the definition of "employer" in the West Virginia Human Rights Act. Zeng points to the "work sharing" relationship between the West Virginia Human Relations Commission and the EEOC, stating that the relationship is a further indication of the State's clear intention to waive immunity. Furthermore, Zeng cites to federal cases holding that Congress intended to abrogate the States' sovereign immunity in Title VII cases. Lastly, Zeng argues that he also sued Mr. Joseph Shapiro, Dean of MUSOM, and

6

Mr. Jerome Gilbert, President of Marshall University, naming them as defendants, and these individuals are not entitled to sovereign immunity.

Zeng disagrees with MUSOM's contention that the tenure process was fair and nondiscriminatory, emphasizing that the requirement of external research funding was not communicated to him at the time of his appointment, but was added later and then used as an excuse for denying him tenure. Zeng asserts that a reasonable jury could conclude that the addition of external funding as a tenure requirement was unreasonable, arbitrary, and capricious. He also disagrees with MUSOM's interpretation of the employment agreement, reiterating that the contract was ended prematurely to punish him for contesting MUSOM's discriminatory employment practices.

## IV.   <u>Standard of Review</u>

MUSOM files its motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. MUSOM does not specify which subsection of Rule 12 forms the basis of the motion; however, Rule 12(b)(1) addresses a lack of subject matter jurisdiction and Rule 12(b)(6) involves complaints that fail to state a claim upon which relief may be granted. Accordingly, the standards governing those subsections are applicable.

### A.  *Rule 12(b)(1)*

MUSOM moves for dismissal on the grounds of lack of exhaustion and Eleventh Amendment immunity, arguing that these principles preclude the Court's subject matter jurisdiction over the complaint. A Rule 12(b)(1) motion may be presented in one of two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true; in other words, a "factual attack." *Johnson v. West Virginia Divison of Rehab. Servs.*, No. CV 3:16-9308, 2017 WL 1395501, at *2 (S.D.W. Va. Apr. 17, 2017) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986)). In that circumstance,

the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)). Second, the movant may contend, as MUSOM does here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based", also called a "facial attack." *Johnson* 2017 WL 1395501, at *2. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson v. North Carolina,* 905 F.Supp.2d 712, 719 (W.D.N.C. Oct. 17, 2012). The court should grant dismissal when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Adams,* 697 F.2d at 1219).

### B.  Rule 12(b)(6)

Rule 12(b)(6) permits the court to dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court further explained the "plausibility" standard in *Iqbal*, stating:

> The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief."

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)).

As stated, in deciding a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). Nonetheless, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson,* 551 U.S. at 94. However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions

never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only '"where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir.2008)).

## V.    **Discussion**

Preliminarily, the undersigned addresses the role of the Court in deciding a Motion to Dismiss. Here, both parties have submitted documents in support of their positions. However, at this stage of the litigation, the undersigned will not consider documentation that is not integral to the complaint; particularly, as the paperwork submitted has not been authenticated, is subject to interpretation, and may not include all relevant information. *See Zhao v. Keuka College,* -- F.Supp.3d --, 2017 WL 3917145, at 6 (W.D.N.Y Sept. 7, 2017) (reiterating that in a motion to dismiss, the court is generally limited to reviewing the allegations contained within the four corners of the complaint). The undersigned declines to entertain the parties' dueling arguments regarding the propriety of the tenure decision and the interpretation of the employment contract, as these issues require fact-finding that is inappropriate at this stage of the litigation.

In addition, the undersigned rejects Zeng's contention that he named Dr. Shapiro and Mr. Gilbert as defendants in the complaint. Zeng states in his responsive memorandum that he intended to join these individuals and, as proof of his intent, attaches handwritten summonses directed to Dr. Shapiro and Mr. Gilbert. (ECF No. 23-3 at 1, 2). Given the language in the complaint, the undersigned does not find this contention persuasive. In the style of the complaint, Zeng lists only Marshall University as a defendant. While he does include Dr. Shapiro's name below Marshall University, Dr.

10

Shapiro was identified as an agent for service of process and not as a separate defendant. This conclusion is further verified by paragraph 9 of the complaint, where Zeng lists only Marshall University as a party defendant, and by the causes of action and prayer for relief, which reference a singular "defendant." Accordingly, the undersigned **FINDS** that Dr. Shapiro and Mr. Gilbert are not named as defendants in this complaint and have not been served with process. Thus, the matter of their joinder will be addressed when Zeng's Motion to Amend the Complaint is considered.

Applying the relevant standards of review, the undersigned examines each Count of Zeng's complaint in turn.

### A. *Employment Discrimination under Title VII*

Title VII prohibits discrimination with respect to the hiring, firing, "compensation, terms, conditions, or privileges of employment" on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Zeng claims that MUSOM violated Title VII by paying him less than his Caucasian colleagues, by placing higher expectations on Asian employees, and by denying him tenure due to his Chinese origin and his Asian race. MUSOM broadly argues that this Court lacks subject matter jurisdiction over this claim because (1) Zeng failed to exhaust his administrative remedies, and (2) MUSOM is protected from suit under the Eleventh Amendment to the United States Constitution. Neither argument has merit.

Before filing a lawsuit under Title VII, "a plaintiff must exhaust [his or] her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000). When a case of unlawful employment practice occurs in a State, which has a law prohibiting such unlawful practices, the EEOC will allow the State an opportunity to resolve the matter before acting on the EEOC charge. 42 U.S.C.

§ 2000e-5(c). If the charge is lodged against a governmental agency or political subdivision and is not resolved by a conciliation agreement, or is dismissed, the EEOC will provide the complainant with a right-to-sue letter, advising the complainant that a civil action may be brought against the governmental agency or political subdivision within ninety days of receipt of the letter. 42 U.S.C. § 2000e-5(f)(1); *also Alvarado v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 458 (4th Cir. 1988) ("Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed.") "[The] receipt of or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. N.C. Dep't of Correction,* 48 F.3d 134, 140 (4th Cir. 1995). The EEOC charge determines the scope of a complainant's right to sue. Therefore, the factual allegations asserted in the judicial complaint must correspond or be "reasonably related" to the allegations made in the EEOC charge.

In this case, Zeng filed a charge with the EEOC and West Virginia Human Rights Commission on May 16, 2016. (ECF No. 2-1 at 2). In the charge, Zeng complained of discrimination in MUSOM's tenure decision, as well as retaliation for Zeng's opposition to MUSOM's unlawful employment practices. (*Id.*). On February 23, 2017, the EEOC sent Zeng a right-to-sue letter, explaining that the EEOC was unable to conclude, based upon its investigation, that MUSOM violated human rights statutes. (*Id.* at 1). Zeng filed the instant complaint on May 23, 2017, within ninety days after receipt of the right-to-sue letter. Therefore, the undersigned **FINDS** that Zeng exhausted the requisite administrative remedies before instituting a civil action based on Title VII violations.

MUSOM maintains that Zeng failed to exhaust his administrative remedies, because he filed this lawsuit before completing the grievance process with the PEGB.

MUSOM is mistaken. Title VII requires a complainant to pursue proceedings with a State or local authority tasked with granting or seeking relief, or instituting criminal proceedings, related to prohibited employment practices covered under Title VII—in this case the West Virginia Human Rights Commission. 42 U.S.C. § 2000e-5(c). Zeng fulfilled that requirement when he concurrently filed his discrimination and retaliation claims with the EEOC and the West Virginia Human Rights Commission. While his grievances may also allege discrimination and retaliation, the PEGB is not authorized to determine liability under the West Virginia Human Rights Act; therefore, actions filed under the Human Rights Act do not require exhaustion of the grievance process. *Singh v. Nerhood,* No. 3:11-cv-00701, 2012 WL 4464025, at *8-9 (S.D.W. Va. Sept. 26, 2012); *see, also, Weimer v. Sanders,* 752 S.E.2d 398 (W. Va. 2013). In *Weimer,* the West Virginia Supreme Court of Appeals ("WVSC") clarified that a public employee in West Virginia is not required to file a grievance with the PEGB prior to instituting a civil action alleging violations of the West Virginia Human Rights Act. *Id.* at 406. Similarly, a public employee who files a grievance based upon discrimination is not required to exhaust the grievance process before resorting to the court, if the judicial complaint alleges a violation of the Human Rights Act. *Id.* at 408. As the Court explained, public employees should not be treated differently from private employees in cases of *discrimination* and should not be deprived of the opportunity to proceed directly to court with such a claim. *Id.* at 407. Clearly, Count I of Zeng's complaint asserts a claim under Title VII, a human rights statute. Applying the same logic used by the WVSC in *Weimer*, the PEGB lacks authority to decide liability under Title VII. Therefore, Zeng is not required to complete the PEGB's grievance process as a jurisdictional prerequisite to filing a Title VII claim in this court.

Looking next at MUSOM's assertion of sovereign immunity, the Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). "The question of whether an agency or a state official is properly considered an arm of the state and, therefore, entitled to Eleventh Amendment immunity, is a question of federal law." *Coonts v. Randolph Cty. Circuit Court Judge*, No. 2:15-CV-21, 2015 WL 12791398, at *2 (N.D.W. Va. Sept. 18, 2015) (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. 425 (1997)). To determine whether an official is an arm of the state, the Fourth Circuit applies a four-factor test, which considers "whether the state treasury will be responsible for paying any judgment that might be awarded ... [W]hether the entity exercises a significant

14

degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of State law." *Id.* Significantly, "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *Id.* (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. at 431). In this case, an analysis under the four-factor test is unnecessary, because the law is well-settled that Marshall University, doing business as MUSOM, is an arm of the State of West Virginia entitled to the protection of sovereign immunity. *Kerr v. Marshall Univ. Bd. of Governors*, No. 2:14-CV-12333, 2015 WL 1405537, at *9 (S.D.W. Va. Mar. 26, 2015), *aff'd,* 824 F.3d 62 (4th Cir. 2016) (citing *Zimmeck v. Marshall Univ. Bd. of Governors*, No. 3:13–cv-14743, 2013 WL 5700591, at *5-6 (S.D.W. Va. Oct. 18, 2013)).

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno v. Erwin*, No.: 2:13-cv-00815, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988) (markings omitted)). Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Finally, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S.

15

431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.").

As Zeng points out in his response to MUSOM's Motion to Dismiss, the United States Supreme Court held in *Fitzpatrick v. Bitzer* that Congress expressly abrogated the States' sovereign immunity in Title VII cases; consequently, the second exception applies to Zeng's Title VII claims against MUSOM. *Fitzpatrick,* 427 U.S. 445, 456-57 (1976). The holding in *Fitzpatrick* has been recognized and upheld in this circuit. *See Stewart, Jr. v. Va. Comm. Univ.,* 414 Fed. Appx. 555, 556 (4th Cir. 2011). As such, the undersigned **FINDS** that MUSOM is not entitled to sovereign immunity from Count 1 of Zeng's complaint.

Although MUSOM's exhaustion and immunity defenses are without merit, the analysis is not finished. The Court must also determine whether Zeng's claim of discrimination under Title VII has facial plausibility. "In general, there are 'two avenues' by which a plaintiff may prove intentional discrimination at trial." *Mandengue v. ADT Security Systems, Inc.,* No. ELH-09-3103, 2012 WL 892621, at \*13 (D. Md. Mar. 14, 2012) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284 (4th Cir. 2004)). First, the plaintiff can offer "direct or indirect evidence of discrimination under ordinary principles of proof." *Id.* (citations and markings omitted). In the alternative, a plaintiff may use the burden-shifting approach described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Id.* at \*14. The *McDonnell Douglas* approach requires the plaintiff to establish a *prima facie* case of discrimination. *Id.* Generally, the plaintiff must

show "that the employer took adverse action against an employee who was qualified for employment 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)); *see, also, Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) ("Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."). The plaintiff is not required to establish discriminatory intent in the *prima facie* case, nor "exclude every hypothetical reason for the defendant's action toward him." *Mandengue,* 2012 WL 892621, at *15 (quoting *Sledge v. J.P. Stevens & Co.,* 585 F.2d 625, 643 (4th Cir. 1978)). Moreover, to survive a motion to dismiss, the plaintiff "need not plead a *prima facie* case of discrimination." *Id.,* at *16 (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002)). Instead, the plaintiff is only required to provide a short, plain statement of the claim that gives the defendant fair notice of its nature and grounds, and factual allegations that raise the right to relief above the speculative level. *Twombly,* 550 U.S. at 555; *Swierkiewicz,* 534 U.S. at 512; *and Bass v. E.I DuPont de Nemours & Co.,* 324 F.3d 761, 764 (4th Cir. 2003) (holding that "[w]hile a plaintiff is *not* charged with pleading facts sufficient to prove [his] case, as an evidentiary matter, in [his] complaint, a plaintiff *is* required to allege facts that support a claim for relief.").

Accepting the factual allegations in the complaint as true and construing them in the light most favorable to Zeng, the undersigned concludes that the complaint sets forth an adverse employment action (denial of tenure) taken against Zeng, which was based on

17

his race (Asian), as demonstrated by the contrasting treatment given to his tenure application versus that given to tenure applications submitted by similarly situated Caucasian colleagues. Therefore, the undersigned **FINDS** that Count 1 of Zeng's complaint states a plausible claim of discrimination under Title VII.

### B. Retaliation in Violation of Title VII and § 1981

Zeng's second count stems from the alleged premature termination of his employment contract in retaliation for his refusal to quietly accept the denial of his application for tenure. Zeng alleged retaliation in his charge to the EEOC and the West Virginia Human Rights Commission, (ECF No. 2-1 at 2), and received a right-to-sue letter. Accordingly, for the reasons explained above, MUSOM's motion to dismiss Zeng's Title VII retaliation claim based on lack of exhaustion must fail. Further, given congressional abrogation of sovereign immunity against Title VII claims, MUSOM's motion to dismiss on that ground is likewise without merit.

On the other hand, MUSOM is entitled to sovereign immunity from Zeng's claim brought under 42 U.S.C. § 1981. *Demuren v. Old Dominion University,* 33 F.Supp.2d 469, 474-75 (E.D. Va. 1999) (holding that "[l]ike § 1983, § 1981 lacks the requisite clear congressional intent to abrogate."); *see, also, Stewart v. The University of North Carolina System,* 673 Fed. Appx. 269, 270 (4th Cir. 2016) (citing *Quern v. Jordan,* 440 U.S. 332, 341 (1979) *and Mann v. Winston Salem State University,* No. 1:14CV1054, 2015 WL 5336146, at *4 (M.D.N.C. Sept. 14, 2015 (recognizing that [t]he Supreme Court has held that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units ... [a]s such, Plaintiff cannot assert a cause of action under § 1981 against [a state university]") (internal citation omitted). Therefore, the undersigned

**FINDS** that Zeng exhausted his administrative remedies under Title VII, that MUSOM is not entitled to immunity as to the Title VII claim, but MUSOM is entitled to immunity from Zeng's § 1981 claim.

The undersigned next examines the complaint to determine if Zeng has alleged a plausible claim of retaliation under Title VII. The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190-91 (4th Cir. 2010) (citing *Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir. 2004)). Zeng claims that his employment contract was terminated eight months early because he refused to abandon his charge of discrimination in MUSOM's decision to deny his tenure application. Factually, Zeng alleges that the Dean of MUSOM offered to extend Zeng's contract from February 2017 to June 2017 if he agreed not to "make a fuss" about the tenure decision. Zeng proceeded to file an EEOC charge and grievance with the PEGB, which prompted Marshall University's associate general counsel to offer Zeng employment through February 2017 if he agreed to abandon his charge, grievance, and any claim against MUSOM. When Zeng refused, his employment was terminated in June 2016. As such, the undersigned **FINDS** that Zeng has included enough factual support to state a plausible claim of retaliation by MUSOM under Title VII.

### C. Unlawful Discrimination in Violation of West Virginia Law

For his third count, Zeng alleges that MUSOM discriminated against him in violation of West Virginia Code § 6C-2-2(l) by misapplying policies, rules, and written agreements and by denying him equal pay and tenure. West Virginia Code § 6C-2-2 sets forth definitions to be used in interpreting articles two and three of Chapter 6C of the

West Virginia code. Subsection (l) defines the term "harassment" to be "repeated or continual disturbance, irritation or annoyance of an employee that is contrary to the behavior expected by law, policy and profession." W. Va. Code § 6C-2-2(l). Importantly, Chapter 6C, articles two and three, are not provisions that specifically prohibit discriminatory behavior; instead, they outline the West Virginia Public Employees Grievance Procedure and the powers, duties, responsibilities, and processes of the West Virginia Public Employees Grievance Board. As such, Zeng fails to state a comprehensible claim under § 6C-2-2(l). Even if this section could be interpreted to prohibit certain employment actions, this count is still subject to dismissal, because Zeng cannot maintain a private cause of action under W. Va. Code § 6C-2-2(l). *See Subramani v. West Virignia Bd. of Governors,* No. 14-0924, 2015 WL 7628720, at *7 (W. Va. Nov. 20, 2015). In *Subramani*, the WVSC explained that the West Virginia legislature gave no statutory directive to create a private cause of action under the Public Employees Grievance Procedure. Indeed, the legislature explicitly stated the purposes of the grievance procedure, and those purposes did not include the creation of a private cause of action. In the absence of such a directive, judicial recognition of a private cause of action "would be inconsistent with the underlying purposes of the grievance procedure, and would only serve to usurp the legislative scheme." *Id.* Accordingly, the undersigned **FINDS** that Zeng fails to state a claim for discrimination in violation of W. Va. Code § 6C-2-2(l).

### D.  Retaliation in Violation of West Virginia Code

In Count 4 of the complaint, Zeng alleges that MUSOM retaliated against him in violation of West Virginia Code § 6C-1-3 for opposing discriminatory employment practices. West Virginia Code § 6C-1-1, *et seq.*, also called the Whistle-blower Law, prohibits employers from discharging, threatening, discriminating, or otherwise

retaliating against an employee who makes "a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." W. Va. Code § 6C-1-3(a). Presumably, Zeng bases this count upon his alleged early termination from employment due to his refusal to abandon challenges to the tenure decision.

To begin, the undersigned considers MUSOM's defense of sovereign immunity. As previously stated, MUSOM is an arm of the State of West Virginia entitled to sovereign immunity. Consequently, Zeng is precluded from suing MUSOM unless an exception to immunity applies. Zeng cites no legal authority for the proposition that Congress abrogated West Virginia's sovereign immunity in cases based upon an alleged breach of the State's own Whistle-blower Act. Frankly, such an act by Congress would be highly unlikely.

Furthermore, Zeng provides no argument or evidence that the State waived its sovereign immunity in the context of a Whistle-blower case brought in federal court. As previously noted, such a waiver must be express, constituting an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted). While the State of West Virginia "has waived its sovereign immunity and consented to suit in *state court*" under certain circumstances, no similar waiver has been expressed for actions that are filed in federal court. *Kula v. W. Virginia*, No. 3:11-CV-34, 2011 WL 13196150, at *3 (N.D.W. Va. June 10, 2011), *aff'd sub nom. Kula v. W. Virginia Dep't of Transp. Motor Vehicle Admr's*, 455 Fed. Appx. 302 (4th Cir. 2011) (holding that "the immunity provided by the Eleventh Amendment remains intact as a bar to suing the State of West Virginia in the federal forum."); *and*

*Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court).

While the Whistle-blower Act includes injunctive relief, which might trigger the *Ex Parte Young* exception, that exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because MUSOM is not a state officer, but rather a state entity or agency, the *Ex Parte Young* exception does not act to waive MUSOM's immunity. *Lee-Thomas v. Prince George's Cty. Public Schools,* 666 F.3d 244, 249 (4th Cir. 2012) (recognizing that the lawsuit seeking injunctive relief must name a state official as the defendant, not state agency); *Chafin v. Western Regional Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *5 (S.D.W. Va. Jul. 12, 2013) (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for

22

prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction"). Therefore, the undersigned **FINDS** that MUSOM is entitled to sovereign immunity from Zeng's Whistle-blower claim as it is asserted in Count 4 of the Complaint.

## VI.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Defendant's Motion to Dismiss, (ECF No. 17), be **GRANTED**, in part, and **DENIED**, in part, as follows:

1.      The Motion be **DENIED** with respect to Counts 1 and 2 of the Complaint, alleging violations under Title VII of the Civil Rights Act of 1964;

2.      The Motion be **GRANTED** with respect to the § 1981 claim alleged in Count 2 and to Counts 3 and 4 of the Complaint; and

3.      Count 2's Section 1981 claim and Count 3 be dismissed, with prejudice, and Count 4 be dismissed, without prejudice, to the extent it seeks prospective injunctive relief.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (for the filing of objections) and three days (if this document was received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is

made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:**  November 6, 2017

Cheryl A. Eifert
United States Magistrate Judge