**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**WEI-PING ZENG,**

      **Plaintiff,**

**v.**                                    **Case No.: 3:17-cv-03008**

**MARSHALL UNIVERSITY,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On May 23, 2017, Plaintiff Wei-ping Zeng, proceeding *pro se*, filed a complaint alleging unlawful employment practices that culminated in his discharge from Marshall University's School of Medicine ("MU")[1]. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently at issue is Plaintiff's Motion for Preliminary Injunction, (ECF No. 32). Defendant has filed a memorandum in opposition to the motion, (ECF No. 35), and Plaintiff has replied, (ECF No. 39). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's Motion for Preliminary Injunction, but allow Plaintiff a reasonable period of time, not to exceed thirty (30) days, in which to remove his property from MU.

---

[1] For the purposes of this Proposed Findings & Recommendations, the acronym "MU" will be used to refer to both Marshall University and Marshall University's School of Medicine, whichever is most appropriate in context.

## I.    <u>Relevant Background Information</u>

Plaintiff is a naturalized United States citizen, originally from China. On September 1, 2009, he commenced employment with MU and was appointed to the Department of Biochemistry and Microbiology as an Associate Professor. At the time of his appointment, Plaintiff understood that he would be on a tenure track. In October 2015, Plaintiff submitted an application for tenure to the Department of Biochemistry and Microbiology's promotion and tenure committee. On April 30, 2016, Plaintiff was notified that his application had been denied. MU subsequently terminated Plaintiff's employment on June 30, 2016, because of his failure to obtain tenure. Plaintiff filed the instant complaint on May 23, 2017, alleging that the denial of his tenure application was improperly motivated by discrimination on the basis of national origin (Chinese) and race (Asian).

On November 1, 2017, Plaintiff filed a motion for preliminary injunction. In the motion and attached memorandum, Plaintiff asks the Court to enter an order prohibiting Defendant from discarding and destroying Plaintiff's laboratory equipment, supplies, experimental samples, and reagents, which were left in his laboratory at MU when his employment ended. Plaintiff also asks the Court to Order MU to allow Plaintiff access to various facilities and instruments located on MU's campus. In response, Defendant asks the Court to deny Plaintiff's motion, arguing that he has not met any of the factors necessary to justify a preliminary injunction. On November 8, 2017, the undersigned held a hearing to address Plaintiff's motion. The hearing was followed by a telephone call on November 15, 2017, during which the parties advised the Court that they could not resolve the motion. The following day, Plaintiff filed a reply memorandum, stressing the irreplaceable nature of his biologic samples and reagents

and addressing the four factors to be considered in resolving a motion for preliminary injunction.

## II.   <u>Discussion</u>

No plaintiff is automatically entitled to a preliminary injunction. Instead, "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal citations and quotation marks omitted). To succeed on a request for injunctive relief, a plaintiff must make a "clear showing" that he is entitled to such relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Courts in this circuit consider the following four factors in determining whether a plaintiff has met that standard:

> (1) the movant's likelihood of success on the merits; (2) the likelihood that the movant will suffer irreparable harm in the absence of preliminary injunctive relief; (3) whether the balance of equities tip in the movant's favor; and (4) the public interest.

*Id.* at 20. As the moving party, the plaintiff bears the burden of establishing that each factor weighs in his favor and justifies the relief requested. *See Granny Goose Foods, Inc. v. Bhd. of 184 Teamsters and Auto Truck Drivers Local No. 70,* 415 U.S. 423, 441 (1974). "These factors are not, however, all weighted equally." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). To the contrary, the threshold determination is whether the plaintiff has shown that irreparable harm is likely to occur if an injunction is not granted. *Id.* If the plaintiff fails to demonstrate this factor, his quest for injunctive relief comes to an end. In *Scotts v. United Industries Corp,* the United States Court of Appeals for the Fourth Circuit describes how the analysis generally proceeds:

> When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.

*Scott,* 315 F.3d 264, 271 (4th Cir. 2002) (internal quotations and citations omitted). A showing of irreparable harm requires the likelihood of an injury that is both actual and immediate, *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983); one that cannot be adequately satisfied with a monetary award, or accurately calculated, or that involves other rare and exceptional circumstances that justify the extraordinary relief of an injunction. *Hughes*, 17 F.3d at 693-94. With these standards in mind, the undersigned considers the merits of Plaintiff's motion.

### A. Request for an Order Prohibiting MU from Disposing of Plaintiff's Laboratory Equipment, Samples, and Reagents

Plaintiff claims that on June 29, 2016, he was instructed to return his keys and electronic pass to MU in anticipation of his June 30, 2016 termination. Given the compressed time frame, Plaintiff was unable to remove all of his personal belongings located in his laboratory at MU. The belongings left behind included personal laboratory equipment, experimental samples, and reagents. (ECF No. 33 at 2). According to Plaintiff, his biologic samples and reagents are of particular importance, because they constitute the fruits of his labor over the entirety of his scientific career; thus, they are irreplaceable. (*Id.*). He states that these samples and reagents require storage in special freezers and in liquid nitrogen dewar to prevent them from perishing or losing their

4

usefulness. The freezer must be equipped with an emergency power supply, and the dewar must be periodically replenished with liquid nitrogen. (*Id.*). Plaintiff adds that, for biosafety reasons, these samples and reagents must be stored in a laboratory setting. Plaintiff states that since his termination on June 30, 2016, his equipment, samples, and reagents have remained in the laboratory that Plaintiff previously occupied at MU and have been maintained and preserved by MU without incident.

On October 3, 2017, more than a year after Plaintiff's departure from MU, Dr. G. Rankin, MU's Basic Science Department Chair, wrote to Plaintiff advising him that he needed to remove his personal belongings from the laboratory, including his equipment, biologic samples, and reagents, by November 15, 2017. The letter indicated that any items not removed would be subject to disposal by MU. After receiving the letter, Plaintiff spoke to the manager of another laboratory located on MU's campus and asked if he could store his items in that laboratory. The manager originally agreed to accept the items, but shortly before the transfer was to occur, she informed Plaintiff that she had been instructed not to accept them. Plaintiff argues that MU has many vacant laboratory spaces and can easily store the equipment, samples, and reagents. He claims that if the samples and reagents are not properly preserved, or are disposed of, he will suffer an irreparable loss. For that reason, Plaintiff requests an Order prohibiting MU from destroying the items; in effect, forcing MU to continue to store, maintain, and preserve them until resolution of the case.

In response, MU argues that it should not be required to store Plaintiff's personal belongings, maintain his freezer, and replenish his dewar when he is no longer an MU employee. (ECF No. 35 at 1-2). MU points out that it has given Plaintiff well over a year to collect his things, yet he has made no effort to vacate the laboratory. MU disputes

Plaintiff's representation about laboratory space on campus, stating that the space occupied by Plaintiff's belongings is needed for use by another scientist, who is an employee of MU. MU further contends that Plaintiff left the laboratory space in disarray, refused to remove freezers that were not in use, and forced MU to maintain his personal biologic samples and reagents for more than a year at MU's expense. MU notes that Plaintiff is now employed at Texas Tech University located in El Paso and suggests that Plaintiff transfer his laboratory items to the Texas Tech campus. Going through each of the four factors used in determining a motion for preliminary injunction, MU asserts that Plaintiff cannot clearly show that he is entitled to relief under any of the factors. (*Id.* at 3-6).

In his reply, Plaintiff contests MU's description of the condition in which he left the laboratory, and also contests MU's assessment of the four injunction factors. Plaintiff emphasizes that a loss of his biologic samples and reagents would constitute irreparable harm, because of their unique nature. Plaintiff asserts that transferring his laboratory equipment, specimens, and reagents to Texas Tech University is not a viable option, because Texas Tech has already refused his request to store them on campus, explaining that it has no available laboratory space. Plaintiff argues that a balance of equities strongly favors his position given that MU has excess laboratory space available.

As mandated, the undersigned looks first at the issue of irreparable harm. Unless Plaintiff can make a strong showing under this factor, his motion fails regardless of the remaining three factors. The undersigned **FINDS** that Plaintiff has not made a clear showing that he is likely to suffer irreparable harm if an injunction is denied. While he could potentially make such a showing if MU insisted on disposing of his unique biologic samples and reagents, that is not MU's position. Instead, MU merely requests that

Plaintiff remove his personal laboratory items from MU's campus. Plaintiff has not made a clear showing that relocating and storing the items at a different facility would permanently harm or destroy the samples and reagents. Moreover, Plaintiff has failed to clearly show that a reasonable alternative for the storage of his equipment, samples, and reagents is unattainable. Plaintiff attaches an email from his supervisor at Texas Tech University verifying the lack of laboratory space on that campus. However, Plaintiff offers no evidence corroborating any other steps he has taken to identify different storage opportunities. Even if university space is not an option, specialized commercial storage facilities are available to transfer, accept, maintain, and preserve biologic samples, reagents, and laboratory equipment, just like those belonging to Plaintiff.[2] Plaintiff does not indicate that he has contacted any of these facilities. While Plaintiff may not wish to incur the expenses associated with relocating and preserving his samples and equipment, the fact that he will incur expense is not sufficient to demonstrate irreparable harm. Indeed, Plaintiff can seek reimbursement of these expenses should he succeed in this action. Therefore, as Plaintiff fails to make a strong showing of irreparable harm, no other factor needs to be examined, and his request for injunctive relief on this ground must be denied.

### B.  Order Allowing Plaintiff Access to MU's Facilities and Equipment

Likewise, the undersigned **FINDS** that Plaintiff has failed to demonstrate that irreparable harm would occur if he is prevented from using MU's facilities and equipment. In particular, Plaintiff complains that he has not been permitted to access

---

[2]   For example, in this region of the United States, the following companies offer short-term and long-term storage of such items: Accelerated Laboratory & Hospital Relocations, Columbus, OH; Biostorage Technologies, Indianapolis, IN; BioSpeciMan, Kutztown, PA; Biomedical Research Institute, Rockville, MD; and EPL Archives, LLC, Sterling, VA.

and use the Flow Cytometry Core Facility. He contends that researchers outside of MU are permitted to use the facility in exchange for payment of a fee, and all that he requests is access equal to that given to other outside researchers. In support of his position, Plaintiff asserts that MU is a place of public accommodation under 42 U.S.C. § 2000a(a) and, as such, Plaintiff has a statutory right to access MU's facilities. (ECF No. 33 at 5-8).

Defendant responds by arguing that 42 U.S.C. § 2000a does not apply here, because MU is not a place of public accommodation as defined in the statute. (ECF No. 35 at 6-7). Furthermore, Defendant states that Plaintiff seeks to access an area of MU that is restricted and controlled. Defendant explains that the laboratory spaces at MU are not open to the general public for reasons of safety, security, and protection of biological samples. (*Id.* at 8). Defendant argues that Plaintiff has no right to access restricted areas at MU when he is no longer an employee with a need to be in the restricted areas.

Regardless of whether MU qualifies as a place of public accommodation under 42 U.S.C. § 2000a, that statute is inapposite, because it only prohibits an establishment from denying access to public facilities on the basis of race, color, religion, or national origin. Plaintiff does not allege, let alone show, that MU is denying him access to the Flow Cytometry Core Facility for a discriminatory reason. As suggested by defense counsel, Plaintiff's request for access to MU's restricted areas likely has fallen on deaf ears for the simple reason that Plaintiff is adverse to MU in this litigation. In any event, even if Plaintiff alleges a discriminatory motive and provides some basis for that claim, he still is not entitled to an injunction on this ground, because he cannot make a strong showing of irreparable harm from being prevented from using MU's laboratory facilities. Plaintiff has not shown that MU's equipment is so distinctive or special that no other

university in the United States possesses such equipment. Likewise, he has not demonstrated that he, in particular, has some pressing and remarkable need to use the facility and equipment; such that, a denial of access would result in irreplaceable loss. Consequently, Plaintiff cannot satisfy the threshold factor, and his motion for injunctive relief on this ground must also be denied.

## III.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Plaintiff's Motion for Preliminary Injunction, (ECF No. 32), be **DENIED**, but that Plaintiff be allowed a reasonable period of time, not to exceed thirty (30) days, in which to remove his property from MU.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (for the filing of objections) and three days (if this document was received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:** December 1, 2017

Cheryl A. Eifert
United States Magistrate Judge