IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WEI-PING ZENG,

        Plaintiff,

v.                                          Case No.: 3:17-cv-03008

MARSHALL UNIVERSITY;
DR. JEROME A. GILBERT;
DR. JOSEPH SHAPIRO;
DR. W. ELAINE HARDMAN;
DR. DONALD A. PRIMERANO;
and DR. RICHARD EGLETON,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

On May 23, 2017, Plaintiff Wei-ping Zeng ("Zeng"), proceeding *pro se*, filed a complaint alleging unlawful employment practices that culminated in his discharge from Marshall University's School of Medicine ("MUSOM"). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently at issue are Zeng's Motion to Amend Complaint, (ECF No. 28), and his Motion to Change Venue. (ECF No. 30). The issues have been fully briefed by the parties, and oral argument would not assist in resolving the motions. For the reasons that follow, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** that the presiding District Judge **GRANT**, in part, and **DENY,** in

1

part, the Motion to Amend and **DENY** the Motion to Change Venue.

Zeng, a naturalized United States citizen originally from China, alleges that he is a victim of employment discrimination based on his race and national origin. In his original complaint, Zeng asserted claims against Marshall University ("MU") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; 42 U.S.C. § 1981; and West Virginia Code §§ 6C-1-1 and 6C-2-2. He now seeks to amend his complaint to join new defendants and add allegations and causes of action. Zeng also asks the Court to transfer this civil action to the Charleston Division on the basis that Marshall University's influence and power "may affect judicial neutrality." (ECF No. 30 at 1).

I.    **Motion to Amend**

   A.  **New Claims and Defendants**

Zeng seeks to join as defendants MUSOM, the Department of Biochemistry and Microbiology ("DBM"), and the following individuals: Dr. Jerome Gilbert, President of MU; Dr. Joseph Shapiro, Dean of MUSOM; Dr. W. Elaine Hardman, Chair of the DBM's Promotion and Tenure Committee; Dr. Donald Primerano, Interim Chair of the DBM; Dr. Richard Egleton, Member of the Personnel Advisory Committee; and Jendonnae L. Houdyschell, MU's Associate General Counsel. (ECF No. 28-1 at 2).

In Counts 1 and 3 of the proposed amended complaint, Zeng alleges violations of Title VII and 42 U.S.C. § 1981 against Defendants MU, MUSOM, DBM, Shapiro, Gilbert, Hardman, Primerano, and Egleton for denying Zeng's application for tenure on the basis of his race and national origin. (*Id.* at 17-19). In Count 2, Zeng again alleges violations of Title VII and § 1981 in the tenure process on the part of Defendants MU, MUSOM, DBM, Shapiro, Hardman, Primerano, and Egleton. (Id. at 18). Count 4 of the proposed amended complaint asserts that Defendants Primerano and Shapiro interfered with

Zeng's tenure application in violation of Title VII and § 1981. (*Id.* at 19). In Counts 5 and 6, Zeng alleges that Defendants MU, MUSOM, Gilbert, Shapiro, Primerano, and Houdyschell conspired to retaliate, and that Defendants MU, MUSOM, Primerano and Shapiro retaliated, against Zeng for complaining to the Equal Employment Opportunity Commission ("EEOC") and the Public Employees Grievance Board about racial and national origin discrimination. (*Id.*). In particular, Zeng claims that the defendants threatened him with an early termination of his employment contract unless he abandoned his discrimination charges. They then carried out the threat by causing his employment to terminate prior to the contract's official expiration date.

Count 7 of the Amended Complaint alleges violations of Title VII and § 1981 in the breaching of Zeng's employment contract by MU, MUSOM, Primerano, and Shapiro. (ECF No. 28-1 at 20). In Counts 8 and 9, Zeng asserts discrimination in the terms and conditions of his employment by Defendants MUSOM, Primerano, and Shapiro. (*Id.*). Specifically, Zeng claims that he was excluded from a teaching assignment, which he was entitled to receive, and was paid less than Caucasian faculty members. In Counts 10 through 16 of the Amended Complaint, Zeng asserts a variety of claims based on the defendants' alleged violations of West Virginia Code §§ 62-2-2, 61-1-1, 18B-18-2, and 18B-18-5. (*Id.* at 20-23).

For relief, Zeng seeks an order awarding him: (1) tenure; (2) back pay and pay for back benefits beginning on July 1, 2016 until reinstatement of his employment; (3) compensatory damages for loss of reputation, emotional distress, mental anguish, and other injuries; (4) punitive damages; (5) equal pay and damages related to him being previously underpaid as a faculty member (6) interest, and (7) costs and attorneys' fees. (*Id.* at 23-24).

## B. Response in Opposition to Motion to Amend

Defendant filed a response and objection to the Motion to Amend. (ECF No. 40). MU argues that the Motion to Amend should be denied, because the proposed amendments are futile. First, Defendant argues that MUSOM and DBM should not be joined as separate parties, as they are non-legal entities that are a part of and encompassed by MU. As MU is already a defendant in the action, Defendant argues that Zeng has sued the only entity subject to a judgment.

Second, Defendant contends that the individual defendants are immune from suit, because they are named in their official capacities. As such, they represent the State of West Virginia, which has sovereign immunity from Zeng's complaint. Defendant recognizes the exception to sovereign immunity for Title VII claims, but adds that Title VII does not authorize a cause of action against individuals. Consequently, Zeng fails to state a valid Title VII claim against the individuals.

With respect to the conspiracy counts, Defendant argues that all of the alleged co-conspirators were officials or agents of MU, acting within the scope of their professional relationship with that entity. Given that an entity cannot conspire with itself, Defendant asserts that Zeng cannot state a *prima facie* case of conspiracy. Moreover, Defendant contends that two employees or agents of the same corporation cannot form conspiracy, because the law is well settled that a conspiracy cannot exist between members of the same entity.

Finally, Defendant posits that Zeng's state-based claims are precluded by Eleventh Amendment immunity. Defendant contends that while Zeng might be able to sue MU and the other defendants in state court, no waiver of immunity exists for claims initiated in federal court. Defendant adds that all causes of action based upon West

Virginia Code § 62-2-2 must be denied, because the statute does not allow a private cause of action.

## C.  Standard of Review

Rule 15(a)(2) of the Fed. R. Civ. P. provides that the Court should "freely give leave" to file an amended complaint "when justice so requires." *See Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."). Generally, leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir.2007)). "In determining whether a proposed amendment is futile, a court may consider whether the proposed amendment could withstand a motion to dismiss." *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10CV653, 2010 WL 3522084, at *2 (E.D. Va. Sept. 1, 2010) (citing *Perkins v. United States,* 55. F .3d 910, 917 (4th Cir. 1995) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss.")).

## D.  Discussion

### 1.  MU—Counts 1, 2, 3, 6, 7, 8, and 9

As a preliminary matter, the undersigned notes that the presiding District Judge recently entered a Memorandum Opinion and Order finding that Zeng could pursue his

claims against MU under Title VII, but not under 42 U.S.C. § 1981, because MU has sovereign immunity against the latter claims. (ECF No. 49). Accordingly, the undersigned **FINDS** that Zeng's Motion to Amend the complaint against MU should be **GRANTED** as to Counts 1, 2, 3, 6, 7, 8, and 9 to the extent they allege violations under Title VII. The Motion to Amend should be **DENIED**, as futile, to the extent that the above-stated counts asserts claims against MU under 42 U.S.C. § 1981.

### 2. Motion to Join MUSOM and DBM as Separate Defendants

Defendant argues that Zeng's attempt to add MUSOM and DBM as defendants should be rejected, because they are not separate legal entities capable of being sued; rather, they are encompassed within MU. The undersigned agrees. Chapter 18B of the West Virginia Code makes clear that MU includes all of its schools, disciplines, and departments under one university umbrella with a single institutional Board of Governors. The MU Board of Governors is authorized by the West Virginia legislature to "[d]etermine, control, supervise and manage the financial, business and education policies and affairs" of MU. *See* W. Va. Code § 18B-2A-4. The powers and duties of MU's governing board are far-reaching and include the employment of all faculty and staff at the university. *Id.* Accordingly, the undersigned **FINDS** that MU subsumes MUSOM and DBM. As they are not proper defendants in this action, the Motion to Amend to join them as parties should be **DENIED** as futile.

### 3. Title VII Claims Against the Individual Defendants—Counts 1, 2, 3, 4, 6, 7, 8, and 9

Defendant also argues that Zeng's request to add Title VII claims against Defendants Gilbert, Shapiro, Hardman, Primerano, and Egleton should be denied, because Title VII does not "create a cause of action against individuals." (ECF No. 40 at

4). The undersigned also agrees with this position. The law is well settled that Title VII does not provide a remedy against individuals who are not "employers" as that term is defined in the statute. *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (holding that employees "are not liable in their individual capacities for Title VII violations."). None of the individuals named by Zeng in the Motion to Amend is an employer; instead, they are all either colleagues or supervisors. Thus, the individual defendants are not subject to suit under Title VII. *Id.,* 159 F.3d at 180-81. Moreover, Title VII claims against the individual defendants in their official capacities are duplicative of the Title VII claims asserted against MU; therefore, the Title VII claims against the individuals are subject to dismissal for that reason. *Windsor v. Bd. of Educ. of Prince George's Cty.*, No. CV TDC-14-2287, 2016 WL 4939294, at *7 (D. Md. Sept. 13, 2016) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (stating that suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent")). For those reasons, the undersigned **FINDS** that Zeng's request to amend the complaint to add Title VII claims against Defendants Gilbert, Shapiro, Hardman, Primerano, and Egleton should be **DENIED**.

### 4. Discrimination and Retaliation Claims Against the Individual Defendants under 42 U.S.C. § 1981—Counts 1, 2, 3, 4, 6, 7, 8, and 9

Next, the undersigned considers discrimination and retaliation claims asserted by Zeng under 42 U.S.C. § 1981 against the individual defendants. These claims are sprinkled throughout Counts 1, 2, 3, 4, 6, 7, 8, and 9 of the proposed amended complaint. In Count 1, Zeng accuses Defendants Hardman, Primerano, Egleton, Shapiro, and Gilbert of imposing higher standards on Asian tenure applicants than are imposed on

Caucasian applicants. In Counts 2, 3, and 4, Zeng alleges that Defendants Hardman, Primerano, Egleton, and Shapiro intentionally manipulated the tenure application process, distorted information relevant to Zeng's tenure application, and arbitrarily undervalued his accomplishments and contributions with the intent to deny him tenure. Zeng claims that these defendants were motivated by a discriminatory animus toward Zeng based on his race and national origin. In Counts 6 and 7, Zeng alleges that he was retaliated against by Defendants Primerano and Shapiro for filing grievances with the EEOC and the Public Employees Grievance Board, and for failing to abandon the grievances after they were filed. Finally, in Counts 8 and 9, Zeng asserts that Defendants Primerano and Shapiro denied him teaching opportunities and equal pay, and these denials resulted from the same discriminatory animus on the part of said defendants.

> To prevail on a claim of racial or ethnic discrimination, a plaintiff must show that:

> (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing up to his employer's expectations; and (4) similarly situated employees who are not members of the protected class received more favorable treatment.

*Supinger v. Virginia*, 259 F. Supp. 3d 419, 433 (W.D. Va. 2017) (citing *Holiday v. New Hanover Cty. Registrar of Deeds*, 317 Fed. Appx. 344, 345 (4th Cir. 2009)). To survive a motion to dismiss, a plaintiff is not required to demonstrate a *prima facie* case of discrimination. *See Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 515 (2002) ("[W]e hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination ...."). Rather, the plaintiff is required to include sufficient factual allegations in the complaint to state a plausible claim of discrimination.

> To succeed on a claim of retaliation under § 1981, a plaintiff can either use direct or circumstantial evidence, or can establish the claim under the *McDonnell Douglas*

burden-shifting framework. *See Sanders v. Tikras Tech. Sols. Corp.*, ___ Fed. Appx. ___, 2018 WL 1531429, at *1 (4th Cir. Mar. 28, 2018) (citations omitted). As the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") explains:

> There are three steps in the *McDonnell Douglas* framework: (1) the plaintiff must establish a prima facie case of ... retaliation; (2) if the plaintiff presents a prima facie case, then the burden shifts to the defendant to show a legitimate ... non-retaliatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual.

*Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To properly plead a case of retaliation, the plaintiff must allege that (1) he engaged in a protected activity known to the decisionmaker; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Tillery v. Piedmont Airlines, Inc.*, 2016 WL 5334673, at *10 (E.D. Va. Sept. 22, 2016) (citing *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

The undersigned **FINDS** that Zeng includes enough facts in the proposed amended complaint to state plausible claims of discrimination and retaliation against the individual defendants in their personal capacities. Zeng alleges that he is a naturalized citizen of Chinese descent. He was paid less than his Caucasian counterparts; was denied a teaching assignment in favor of a Caucasian colleague; was held to a higher standard for tenure due to his Asian race; was denied tenure despite outperforming Caucasian tenure applicants; and lost his job prematurely in retaliation for complaining to two governmental agencies about employment discrimination on the basis of race and national origin. All of the defendants accused by Zeng played some decision-making role in the denial of his tenure application. Accordingly, as the claims

asserted by Zeng are not futile on their face, he should be permitted to amend his complaint to add Defendants Hardman, Primerano, Egleton, Shapiro, and Gilbert as parties and to pursue discrimination and retaliation claims against them under § 1981.

### 5. Conspiracy Claims Against MU and Defendants Gilbert, Shapiro Primerano, and Houdyschell—Count 5

The undersigned next looks at Zeng's Motion to Amend the complaint to include a count of conspiracy. Count 5 of Zeng's proposed amended complaint contains his conspiracy cause of action, which is asserted against MU and Defendants Primerano, Shapiro, Gilbert, and Houdyschell under 42 U.S.C. § 1985. (ECF No. 28-1 at 19). Title 42 U.S.C. § 1985 provides, in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (3). To maintain a § 1985 conspiracy claim, a plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). "Allegations of 'parallel conduct and a bare assertion of conspiracy' are not enough for a claim to proceed." *Id.* (quoting

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011)).

Defendant argues that Zeng cannot demonstrate the first factor of the five-factor test. According to Defendant, MU cannot conspire with its agents and employees and "two or more employees or agents of the same corporation cannot form a conspiracy with one another because they are not considered two or more separate persons." (ECF No. 40 at 7). In support of its contention, Defendant relies upon the intracorporate conspiracy doctrine, which hold that "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech., Inc. v. Aboud,* 313 F.3d 166, 179 (4th Cir.2002); *see, also, Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000) ("Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation."). Furthermore, the doctrine applies to public entities, as well as private corporations and public government entities. *Dickerson,* 200 F.3d at 767.

There are two exceptions to the intracorporate conspiracy doctrine. *Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 542 (D. Md. 2014). "First, the doctrine is generally inapplicable where a coconspirator possesses a personal stake independent of his relationship to the corporation. Second, a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation." *Id.* (quoting *Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 353 (4th Cir. 2013)) (internal citations and markings omitted).

Zeng does not dispute the application of the intracorporate conspiracy doctrine to the instant action, but asserts that his claims fall within an exception to the doctrine. (ECF No. 45 at 4-6). Zeng alleges that Defendants Primerano and Shapiro were the

primary conspirators, and along with Defendant Houdyschell, attempted to coerce Zeng into abandoning his right to oppose discrimination in the tenure process. When Zeng rebuffed this effort, the three defendants conspired to breach Zeng's employment contract by enforcing an early termination. Zeng contends that the defendants acted outside the scope of their employment with MU and against MU's policies; therefore, the second exception applies in this case. He relies upon this Court's decision in *Singh v. Nerhood,* which he claims "found a valid cause of action of conspiracy against members of Marshall University School of Medicine who apparently acted outside the bounds of employment." (*Id.* at 5) (citing *Singh,* No. 3:11-cv-00701, 2012 WL 4464025 (S.D.W. Va. Sept. 26, 2012)).

Beginning on page 15 of the proposed amended complaint, Zeng sets out factual allegations ostensibly supporting the existence of a conspiracy. According to Zeng, on March 24, 2015, Defendants Primerano and Shapiro sent Zeng a letter, advising him that if he did not receive tenure, his employment contract would expire on June 30, 2016. In November 2015, Defendant Primerano and the DBM's Promotion and Tenure Committee decided against Zeng's application for tenure. (*Id.* at 16). In February 2016, Defendant Shapiro sent a decision letter to Zeng, confirming that he was not likely to receive tenure. (*Id.*). Contrary to the termination date stated in the March 2015 letter, Zeng believed that without tenure, his employment contract expired in February 2017. (*Id.*). At a meeting on February 22, 2016, Zeng and Defendant Shapiro discussed their different understandings of the contract's terms. In an effort to resolve the differences, Defendant Shapiro allegedly agreed to allow Zeng to remain as an employee of MU until June 2017, if Zeng agreed not to make a "fuss" over the tenure decision. Defendant Shapiro's offer was reiterated by Defendant Primerano in a separate meeting with Zeng

on March 16, 2016. After the meeting with Defendant Primerano, Zeng wrote to Defendant Gilbert, asking him to prevent the impending denial of Zeng's tenure application and accusing the decisionmakers of discriminatory animus. When he did not hear from Defendant Gilbert by March 21, 2016, Zeng filed an EEOC questionnaire. Approximately one month later, he spoke with the EEOC and decided to institute a complaint against MU, alleging unlawful discrimination and retaliation. (*Id.*). On April 30, 2016, Defendant Gilbert sent Zeng a letter formally denying his tenure application. On May 5, 2016, Defendant Houdyschell, MU's Associate General Counsel, offered to compromise Zeng's EEOC claim and other potential claims by agreeing to extend Zeng's employment to February 2017. (Id. at 17).

Clearly, the facts alleged by Zeng do not support a conspiracy claim against MU. Indeed, as Zeng concedes, to clear the hurdle of the intracorporate conspiracy doctrine, Zeng must allege that the individual defendants' actions were not authorized by MU. As such, MU could not have conspired with the individual defendants. Similarly, the facts detailing Defendant Houdyschell's actions do not support her participation in a conspiracy. To the contrary, Defendant Houdyschell, in her role as MU's counsel, merely attempted to compromise a legal dispute that preexisted her involvement in the situation. Likewise, the allegations pertaining to Defendant Gilbert fail to include any concrete facts demonstrating his role in a conspiracy. Not only are there no allegations demonstrating contact between Gilbert and the other defendants, but the proposed amended complaint does not indicate that Gilbert had knowledge of the employment contract or Zeng's EEOC complaint. Conclusory allegations of conspiracy are insufficient to state a claim under § 1985. *Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995 (collecting cases); *see also Francis v. Giacomelli,* 588 F.3d 186, 197 (4th Cir.2009)

13

(rejecting § 1985 claim which "amounts to no more than a legal conclusion").

Therefore, the undersigned **FINDS** that the proposed amended complaint fails to state a plausible cause of action of conspiracy against MU and Defendants Houdyschell and Gilbert. Accordingly, the Motion to Amend the complaint to add Count 5 against these defendants should be **DENIED**.  With respect to Defendants Primerano and Shapiro, however, the undersigned **FINDS** that the proposed amended complaint includes a sufficient factual basis to state a plausible claim against them. Zeng alleges that Defendants Primerano and Shapiro conspired as early as March 2015 to shorten Zeng's term of employment, prompting them to write the March 24, 2015 letter to Zeng, which unilaterally set a premature contract termination date. These defendants then carried out their plan of eliminating Zeng from the faculty by wrongfully denying his tenure application. Zeng claims that the denial of tenure was racially motivated, and the early termination was enforced in retaliation for his complaints of discrimination. Based on these factual allegations, the claim of conspiracy against Defendants Primerano and Shapiro is not futile on its face; accordingly, the Motion to Amend the complaint to add Count 5 against Defendants Primerano and Shapiro should be **GRANTED**.

### 6.  State-based Claims—Counts 10, 11, 12, 13, 15, and 16

In the proposed amended complaint, Zeng adds seven state law-based counts; including Counts 10-16. (ECF No. 28-1 at 20-23). Counts 10 through 13 and Count 15 allege violations of West Virginia Code § 6C-2-2, while Count 16 asserts violations of West Virginia Code § 6C-2-2, § 18B-8-2(c), and § 18B-18-5(g). Defendant argues that these counts should not be permitted as West Virginia Code § 6C-2-2 does not create a private cause of action. (ECF No. 40 at 8-9). The undersigned agrees. As this Court explained in the Memorandum Opinion and Order, the West Virginia Supreme Court of

Appeals addressed this issue in an unpublished decision, *Subramani v. West Virginia Univ. Bd. Of Governors,* and concluded that West Virginia Code § 6C-2-2 does not allow a private cause of action. *Id.,* No. 14-924, 2015 WL 7628720, at *6-7 (W. Va. Nov. 20, 2015). Using the same rationale applied in *Subramani, supra,* the undersigned **FINDS** no indication in the language of Chapter 18B that the West Virginia legislature intended to create a private cause of action for money damages for violations of West Virginia Code § 18B-8-1, *et seq.,* or § 18B-15-1, *et seq.* Instead, the legislative intent of the Chapter, as expressed in § 18B-1-1 was to create goals and implement structure in the governance of higher education in the State of West Virginia in order to maximize the considerable potential of the State and benefit its citizens. Zeng supplies no statutory basis for his claims, and such a basis is not clear from the West Virginia Code. Therefore, the undersigned **FINDS** that Zeng's Motion to Amend the complaint to add Counts 10, 11, 12, 13, 15, and 16 should be **DENIED** as futile.

### 7. Whistle-blower Claim—Count 14

Lastly, Zeng alleges in Count 14 of the proposed amended complaint that MU and Defendants Primerano and Shapiro violated West Virginia's Whistle-blower Act, W. Va. Code § 6C-1-3, by retaliating against him for reporting employment discrimination at MU. Specifically, Zeng claims that his employment contract was terminated early, because of his complaints to the EEOC and the Public Employees Grievance Board. The Whistle-blower Act states as follows:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location or privileges of employment because the employee ... makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

W. Va. Code § 6C-1-3(a). Pursuant to the statute, the term "wrongdoing" means "a violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer or appropriate authority." W. Va. Code § 6C–1–2(h). "[I]n short, the Whistle-blower Law protects a public employee from being discharged for making a good faith report of wrongdoing or waste." *Taylor v. W. Virginia Dep't of Health & Human Res.*, 237 W. Va. 549, 562, 788 S.E.2d 295, 308 (2016).

Based on the facts provided by Zeng, the undersigned **FINDS** that his Motion to Amend the complaint to add a West Virginia Whistle-blower count should be **DENIED** as futile. The adverse employment action contemplated by the Whistle-blower Act  (i.e. discharge, threats, discrimination, retaliation) must arise from the employee's good faith reporting of, or his intention to report, the employer's wrongdoing. Consequently, it is axiomatic that the good faith report, or the intention to report, must *precede* the adverse employment action. Here, however, Zeng was advised by Defendants Primerano and Shapiro in a letter dated **March 24, 2015** that his contract would expire on June 30, 2016 if he failed to receive tenure. (ECF No. 23-14; ECF No. 28-1 at 16). Zeng was notified by letter on February 8, 2016 that his tenure application was likely to be denied. (*Id.*). On February 22, 2016, Defendant Shapiro offered to extend Zeng's contract to 2017 if Zeng did not make a "fuss" about the tenure decision. Nearly a month later, Zeng filed an EEOC questionnaire, and the official charges with the EEOC and Public Employees Grievance Board were not lodged until May 2016. (ECF No. 2-1 at 2, 7). As this factual scenario unequivocally demonstrates, Zeng's complaints with the EEOC and the Grievance Board did not cause his June 30, 2016 termination, because that termination

date had been set by the Defendants more than one year before the complaints were contemplated. Consequently, Zeng has failed to allege facts sufficient to state a plausible claim of retaliation under West Virginia's Whistle-blower Act.

Additionally, West Virginia's Whistle-blower Act requires that any civil action asserting a violation of the Act must be brought "within one hundred eighty days after the occurrence of the alleged violation." W. Va. Code § 6C-1-4(a). Zeng claims the violation was his early termination from employment on June 30, 2016. Accordingly, Zeng had until December 27, 2016 in which to file a civil action under the Act. Zeng did not file his complaint until May 28, 2017 and did not seek to assert a whistle-blower claim against the individual defendants until October 27, 2017—well beyond the 180 days permitted by the statute. (ECF No. 28). On this additional ground, Zeng's request to add a whistle-blower claim should be denied.

## E.  Summary

For the reasons stated above, the undersigned **RECOMMENDS** as follows:

1.  Zeng's Motion to Amend should be **GRANTED,** and he should permitted to amend the complaint and proceed against MU in Counts 1, 2, 3, 6, 7, 8, and 9 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. However, claims against MU asserted under 42 U.S.C. §§ 1981, 1983 should not proceed, and Zeng's Motion to Amend to add or reassert those claims should be **DENIED**.

2.  Zeng's Motion to Amend should be **GRANTED,** and he should be permitted to add and proceed against Defendants Hardman, Primerano, Egleton, Shapiro, and Gilbert in Counts 1 and 3; against Defendants Hardman, Primerano, Egleton, and Shapiro in Count 2; and against Defendants Primerano and Shapiro in Counts 4, 6, 7, 8, and 9 under 42 U.S.C. §§ 1981, 1983. However, claims against the individual defendants

under Title VII should not proceed, and Zeng's Motion to Amend to add those claims should be **DENIED**.

3. Zeng's Motion to Amend to add a conspiracy claim in Count 5 under 42 U.S.C. § 1985 should be **GRANTED,** and he should be permitted to proceed with that claim against Defendants Primerano and Shapiro. On the other hand, conspiracy claims against MU and Defendants Houdyschell and Gilbert should not proceed, and  Zeng's Motion to Amend to add those claims should be **DENIED**.

4. Zeng's Motion to Amend the complaint to add the state law-based claims set forth in Counts 10, 11, 12, 13, 14, 15, and 16 should be **DENIED**.

5. Zeng's Motion to Amend the complaint to add as defendants the Marshall University School of Medicine and the Department of Biochemistry and Microbiology should be **DENIED**.

## II.    <u>Motion to Change Venue</u>

Zeng asks for a transfer of this civil action to the Court's Charleston Division pursuant to 28 U.S.C. § 1404. (ECF Nos. 30, 31). He argues that the transfer is warranted, because Marshall University and its affiliated teaching hospital, Cabell Huntington Hospital, are major employers in Huntington. (ECF  No. 31 at 2). Zeng is concerned that the power and influence of these entities over the local community "may affect judicial neutrality." (*Id.*).

MU responds by pointing out that Zeng bears the burden of demonstrating that a transfer is proper and must make this showing by clear and convincing argument. (ECF No. 38 at 2). MU applies the seven-factor test that this circuit uses to determine the propriety of a venue change and concludes that Zeng cannot meet his burden. (*Id.* at 2-4). Moreover, MU contends that Zeng has not provided any basis upon which to question

the neutrality of the Court and merely speculates that jury bias could occur. Finally, MU asserts that Zeng has waived his right to object to the forum by filing his complaint in this division; by participating in a hearing without objection; and by agreeing to a scheduling order set by this Court. (*Id.* at 6-7).

In his reply memorandum, Zeng urges the Court to consider the "twin aims test" of "discouragement of forum-shopping and avoidance of inequitable administration of the laws." (ECF No. 42). He concedes that a transfer would be less convenient for the parties and witnesses, but argues that the inconvenience is relatively insignificant. He reiterates that his concerns about neutrality are valid given that jurors in Huntington are more likely than jurors in Charleston to have direct or indirect ties with the defendants. Zeng disputes MU's waiver argument, indicating that he expressed the desire for a transfer to the Charleston Division in the cover letter that accompanied his complaint. (*Id.* at 2).

Title 28 U.S.C. § 1404 allows the Court to transfer a case to "any other district or division where it might have been brought" for the convenience of the parties and witnesses, or "in the interest of justice." *Id.* § 1404(a). "A decision to transfer venue is committed to the sound discretion of the trial court." *Hafco Foundry v. GMS Mine Repair & Maint., Inc.*, No. CV 1:15-16143, 2016 WL 2903281, at *1–2 (S.D.W. Va. May 18, 2016). When ruling on a motion to transfer, the court should consider seven factors: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *Id.* (citing *Alpha Welding and Fabricating v. Todd Heller, Inc.*, 837 F. Supp. 172, 175 (S.D.W. Va. 1993)).

Zeng does not dispute that moving this case to Charleston would likely decrease convenience and increase the time and expense incurred by the parties and witnesses. However, rather than concentrating on expediency, Zeng relies primarily on the "interest of justice" factor, stressing the purported influence and power MU has in Huntington. A similar argument was made by the plaintiff in *Weishaupt v. Boston College*, No. 1:11-cv-1122, 2012 WL 1439030, at *5  (M.D.N.C. Apr. 24, 2012). As the *Weishaupt* Court observed, plaintiff's concerns were "speculative, at best," because the plaintiff failed to produce any evidence demonstrating that a local jury pool in the University's home jurisdiction would be biased in favor of the University. *Id.* at *6. In *Snyder v. Phelps*, another federal district court reached a similar conclusion, explaining that even though its case had received extensive publicity, mechanisms were in place, such as voir dire,  to ensure jury neutrality. No. RDB-06-1389, 2007 WL 3227213, at *1 (D. Md. Oct. 19, 2007).

Nothing in the record before this Court suggests that Zeng will not receive a fair resolution of his complaint in this division. He produces no evidence to corroborate any of his relevant factual premises. For example, Zeng states, without support, that jurors in Charleston have fewer ties to Marshall than jurors in Huntington. That statement overlooks the fact that Marshall University has a teaching facility in South Charleston, and likely includes a fair number of Charleston residents in its student and alumni rosters. Moreover, Zeng forgets that the Huntington Division of this Court does not draw jurors only from Huntington. To the contrary, the Huntington Division is comprised of four counties: Cabell, Wayne, Putnam, and Mason. With the ability to call jurors from all four of these counties, the undersigned has no doubt that an unbiased jury can be obtained should this matter proceed to trial. Considering the likelihood of seating an

20

unbiased jury, the fact that all of the acts giving rise to the complaint occurred in Cabell County, and noting that most of the parties and witnesses are located in this division, the undersigned **FINDS** no justifiable basis upon which to transfer this civil action to the Charleston Division.

## III.    <u>Proposal and Recommendations</u>

Therefore, for the reasons stated herein, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Plaintiff's Motion to Amend, (ECF No. 28), be **GRANTED**, in part, and **DENIED**, in part, as follows:

1.    The Motion to Amend the complaint be **GRANTED** as to the claims asserted against MU under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, found in Counts 1, 2, 3, 6, 7, 8, and 9 of the proposed amended complaint.

2.    The Motion to Amend the complaint be **DENIED** as to the claims asserted against MU under 42 U.S.C. §§ 1981, 1983 as set forth in Counts 1, 2, 3, 6, 7, 8, and 9 of the proposed amended complaint.

3.    The Motion to Amend the complaint be **GRANTED** as to Plaintiff's request to join Defendants Hardman, Primerano, Egleton, Shapiro, and Gilbert as parties and to assert claims against Defendants Hardman, Primerano, Egleton, Shapiro, and Gilbert under 42 U.S.C. §§ 1981, 1983, including the claims against Defendants Hardman, Primerano, Egleton, Shapiro, and Gilbert as set forth in Counts 1 and 3; against Defendants Hardman, Primerano, Egleton, and Shapiro as set forth in Count 2; and against Defendants Primerano and Shapiro as set forth in Counts 4, 6, 7, 8, and 9.

4.    The Motion to Amend the complaint be **DENIED** as to claims against Defendants  Hardman, Primerano, Egleton, Shapiro, and Gilbert asserted under Title

VII of the Civil Rights act, which are contained in Counts 1, 2, 3, 4, 6, 7, 8, and 9.

5.    The Motion to Amend the complaint to add a conspiracy claim under 42 U.S.C. § 1985 against Defendants Primerano and Shapiro in Count 5 of the proposed amended complaint be **GRANTED**.

6.    The Motion to Amend the complaint to add a conspiracy claim under 42 U.S.C. § 1985 against Defendants MU, Houdyschell, and Gilbert in Count 5 of the proposed amended complaint be **DENIED**.

7.    The Motion to Amend the complaint to add the state law-based claims set forth in Counts 10, 11, 12, 13, 14, 15, and 16 be **DENIED**.

8.    The Motion to Amend the complaint to add as party defendants the Marshall University School of Medicine and the Department of Biochemistry and Microbiology be **DENIED.**

In addition, the undersigned **RECOMMENDS** that the Motion to Change Venue be **DENIED** and Plaintiff be **ORDERED** to file within **twenty (20) days** a revised Amended Complaint that is consistent with the recommendations in this PF&R.

The parties are hereby notified that this PF&R is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (for the filing of objections) and three days (if the PF&R was received by mail) from the date of filing this PF&R within which to file with the Clerk of this Court, specific written objections, identifying the portions of the PF&R to which objection is made and the basis of such objection. An extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:** April 6, 2018

Cheryl A. Eifert
United States Magistrate Judge