## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**WEI-PING ZENG,**

        **Plaintiff,**

**v.**                                        **Case No.: 3:17-cv-03008**

**MARSHALL UNIVERSITY,**
**DR. JEROME A. GILBERT;**
**DR. JOSEPH SHAPIRO;**
**DR. W. ELAINE HARDMAN;**
**DR. DONALD A. PRIMERANO;**
**and DR. RICHARD EGLETON,**

        **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

On May 7, 2018, the second amended complaint, (ECF No. 55), filed by Plaintiff Wei-ping Zeng ("Zeng") was officially docketed. (ECF No. 58). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending are Marshall University's Motion to Partially Dismissal [sic] the second amended complaint, (ECF No. 66); Motion to Dismiss on Behalf of Jerome A. Gilbert, (ECF No. 73); Motion to Dismiss on Behalf of Dr. W. Elaine Hardman and Dr. Richard Egleton, (ECF No. 75); and Motion to Dismiss on Behalf of Dr. Joseph Shapiro and Dr. Donald Primerano, (ECF No. 77). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**, in

part, and **DENY**, in part, the pending Motions to Dismiss as set forth below.

In addition to the motions to dismiss, the parties filed various motions related to briefing the issues addressed in the dispositive motions, including the following:

1.    Plaintiff's Motion for Leave to File a Surreply to Marshall University's Reply to Plaintiff's Response to the Motion to Partially Dismiss filed by Marshall University, (ECF No. 80);

2.    Defendant's Motion to Strike ECF No. 81, which was a surreply to Plaintiff's surreply, (ECF No. 82);

3.    Plaintiff's Motion for Leave to File a Surreply to the Individual Defendants' Replies to Plaintiff's Responses to Defendants' Motions to Dismiss the Second Amended Complaint, (ECF No. 92);

4.    Plaintiff's Modified Motion for Leave to File a Surreply to the Individual Defendants' Replies to Plaintiff's Responses to Defendants' Motions to Dismiss the Second Amended Complaint, (ECF No. 94); and

5.    Plaintiff's Modified Motion for Leave to File a Surreply to the Individual Defendants' Replies to Plaintiff's Responses to Defendants' Motions to Dismiss the Second Amended Complaint, (ECF No. 95).

The Court **GRANTS** ECF No. 82 and **DENIES** the remaining motions. (ECF Nos. 80, 92, 94, and 95). In addition, the Sur-surreply filed by Marshall University, (ECF No. 83), is **STRICKEN** from the record, as it was filed without leave of court. Local Rule of Civil Procedure 7.1(a)(7) is unambiguous that surreply memoranda are not to be filed except by leave of court.

Plaintiff continues to file surreply memoranda *along with* a motion for leave of court. That practice is not appropriate. Nor is it appropriate to simply file a surreply memorandum without seeking leave in any manner. To be perfectly clear, surreply memoranda are not, in general, favorably received and serve only to clutter the record and  delay the proceedings. They should **never** become standard practice, as they have threatened to become in this case. Because the issues in dispute are clear and the

undersigned has no need for more than the standard level of briefing, the parties are advised that the surreply memoranda filed in connection with the Motions to Dismiss have not been considered in rendering the proposed findings and recommendations contained herein.

I. **Motions to Dismiss**

Marshall University ("MU") asks the Court to dismiss Counts 6, 7, and 11 of the second amended complaint, as alleged against MU, as well as all claims against it based on the West Virginia's Human Rights Act ("WVHRA"), the West Virginia Constitution, and Title 133 of the West Virginia Code of State Rules. MU argues that all of the state-based claims must be dismissed, because MU is immune from suit in federal court pursuant to the Eleventh Amendment to the United States Constitution. With respect to Count 6, a retaliation claim, MU states that this Court has already found that claim void of merit. Count 7 alleges a breach of contract, which MU argues is legally unsupportable given the University's inability to contract beyond the end of the State's fiscal year. Finally, MU contends that Count 11, which asserts violations of due process, cannot be maintained as Plaintiff had no property interest in continued employment and suffered no violation of his liberty interest.

Defendant Gilbert argues that he is entitled to dismissal of the complaint against him in its entirety for five reasons. First, Gilbert claims that when acting in his official capacity, he is an arm of the State of West Virginia and therefore enjoys sovereign immunity from suit. Second, in regard to his discretionary functions, Gilbert contends that the complaint lacks allegations demonstrating that he violated a known constitutional right owed to Plaintiff; accordingly, Gilbert should be dismissed on the ground of qualified immunity. Third, he states that Plaintiff asserts claims sounding in

negligence, which is insufficient to meet the standard of liability under 42 U.S.C. §§ 1981, 1983. Fourth, Gilbert maintains that all of the claims asserted against him pursuant to the WVHRA should be dismissed, because he is not an "employer" subject to liability under the Act. Lastly, Gilbert asserts that Count 10 should be dismissed as it alleges a claim under 42 U.S.C. § 1986, which has a one-year statute of limitations. Given that Plaintiff was denied tenure on April 30, 2016, his complaint should have been filed no later than April 29, 2017. However, Plaintiff did not institute this action until May 23, 2017. Gilbert argues that, consequently, Count 10 is barred by the applicable statute of limitations.

Defendants Hardman and Egleton raise three grounds in support of their Motion to Dismiss the second amended complaint in its entirety. They also argue that any claims against them in their official capacities must be dismissed on the basis of sovereign immunity. Likewise, they agree with Defendant Gilbert that they are entitled to qualified immunity, because they did nothing more than provide recommendations to President Gilbert regarding Plaintiff's tenure application, which was an entirely discretionary function and clearly did not violate any constitutional right held by Plaintiff. As their third ground for dismissal, Defendants Hardman and Egleton assert that the WVHRA claims against them found in Counts 1, 2, and 3 of the second amended complaint must be dismissed, because they are not "employers" who can be held liable under the Act.

Like the other individual defendants, Defendants Shapiro and Primerano argue that they are entitled to a dismissal of all claims in the second amended complaint on the grounds of sovereign and qualified immunity. Furthermore, they seek dismissal of the claims alleged under the WVHRA, because they are not "employers" who can be held liable under the Act. Defendants Shapiro and Primerano seek dismissal of Plaintiff's § 1985 claim for civil conspiracy on the basis that the intracorporate conspiracy doctrine

4

shields them from liability and, in any event, Plaintiff fails to provide a factual basis sufficient to state a plausible claim of conspiracy. Finally, Defendants Shapiro and Primerano contend that Plaintiff's breach of contract claims must be dismissed, because (1) Shapiro and Primerano had no contract with Plaintiff; and (2) they did not employ Plaintiff and thus did not terminate his contract.

## II.    **Standard of Review**

MU files its motion for partial dismissal under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, while the individual defendants rely upon Rule 12(b)(6). The requirements of a motion asserted under each Rule are stated below.

A motion under Rule 12(b)(1) examines the Court's jurisdiction over the causes of action asserted in the complaint. In this case, MU argues that the Court lacks jurisdiction on the basis of MU's sovereign immunity under the Eleventh Amendment to the United States Constitution. Such a motion may be presented in one of two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true; in other words, a "factual attack." *Johnson v. West Virginia Divison of Rehab. Servs.*, No. CV 3:16-9308, 2017 WL 1395501, at *2 (S.D.W. Va. Apr. 17, 2017) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986)). In that circumstance, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)).

Second, the movant may contend, as MU does here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based", *Adams,* 697 F.2d at 1219, also called a "facial attack." *Johnson* 2017 WL 1395501, at *2. When presented with

this line of attack, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson v. North Carolina,* 905 F.Supp.2d 712, 719 (W.D.N.C. Oct. 17, 2012). The court should grant dismissal when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Adams,* 697 F.2d at 1219).

A motion under Rule 12(b)(6) addresses whether the plaintiff's complaint includes sufficient factual allegations to state a claim upon which relief may be granted. A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court further explained the "plausibility" standard in *Iqbal*, stating:

> The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief."

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court

to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)).

In deciding a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). Nonetheless, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

As a general rule, courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson,* 551 U.S. at 94. However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir. 2008)).

## III.    <u>Discussion</u>

Each Motion to Dismiss is addressed separately below. Plaintiff's arguments in

opposition to dismissal are discussed only when necessary to explain why the undersigned found them unpersuasive.

### A.  Marshall University

#### 1.  Discrimination under the WVHRA—Counts 1, 2, 3, 6, 7, 8, 9, and 10

In Counts 1, 2, 3, 6, 7, 8, 9 and 10, Plaintiff alleges that MU violated the WVHRA with a variety of misdeeds that culminated in denying Plaintiff tenure and terminating his employment. For relief, Plaintiff seeks an award of tenure, compensation for loss of pay and benefits, and punitive and compensatory damages. MU argues that all of these claims must be dismissed on the basis of sovereign immunity.

In response, Plaintiff contends that there are exceptions to sovereign immunity that allow his state-based claims to proceed against MU and, furthermore, that this Court has supplemental jurisdiction over those claims. As this Court's supplemental jurisdiction is not particularly relevant to MU's sovereign immunity defense, and is not directly contested by MU, the undersigned will not address that argument. Instead, the undersigned focuses on the key issues, which are the scope of MU's sovereign immunity and the availability of any exceptions.

This Court has previously found, and the undersigned hereby **FINDS**, that MU constitutes an arm of the State of West Virginia "and as such is entitled to the protection of Eleventh Amendment sovereign immunity." *Zeng v. Marshall University,* No. 3:17-cv-3008, 2018 WL 1410418, at *8 (S.D.W. Va. Mar. 21, 2018) (citing *Kerr v. Marshall Univ. Bd. of Governors,* No. 2:14-cv-12333, 2015 WL 1405537, at *9 (S.D.W. Va. Mar. 26, 2015), *aff'd,* 824 F.3d 62 (4th Cir. 2016)). "The Eleventh Amendment bars suits in federal court by citizens against unconsenting states and state agencies." *Jemsek v. Rhyne*, 662 F. App'x 206, 210–11 (4th Cir. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman,*

465 U.S. 89, 100 (1984)). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp.,* 465 U.S. at 100.

There are three exceptions to sovereign immunity. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno v. Erwin*, No.: 2:13-cv-00815, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988) (markings omitted)). Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Finally, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp.3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.").

Plaintiff contends that all three exceptions apply here. First, he claims that the West Virginia Legislature expressed its intent to waive sovereign immunity in the WVHRA by defining the term "employer" to include the State of West Virginia. The undersigned agrees that this definition demonstrates legislative intent to waive immunity in state court; however, it does not necessarily extend to a waiver in federal court. As was

previously explained to Plaintiff, to constitute a waiver of sovereign immunity in federal court, there "must be an 'unequivocal' statement of the State's intention to subject itself to suit **in federal court**." *Zeng,* 2018 WL 1410418, at *8 (quoting *Westinghouse Elec. Corp.,* 845 F.2d at 470) (emphasis added). "A State's waiver of immunity in state court will not meet the unequivocal standard necessary to abrogate the Eleventh Amendment immunity." *Id.* Consequently, if the West Virginia Legislature intended to waive the State's sovereign immunity in federal court, then an explicit waiver should appear somewhere in the language of the WVHRA. An examination of the WVHRA, W. Va. Code § 5-11-1 *et seq.*, does not support Plaintiff's position. To the contrary, the provisions of the WVHRA pertaining to the judiciary explicitly limit judicial involvement to the West Virginia state courts. *See* W. Va. Code §§ 5-11-8; 5-11-11; 5-11-13; 5-11-18; 5-11-20.

The cases relied upon by Plaintiff are equally unpersuasive. Plaintiff cites to one case in which a private employer was sued in federal court for alleged violations of the WVHRA. *Henderson v. Columbia Natural Resources*, 45 F. Supp.2d 532 (S.D.W. Va. 1999). *Henderson* is inapposite; obviously, there was no claim of sovereign immunity in *Henderson* as the employer was not the State of West Virginia. Plaintiff also relies on *Barefoot v. Sundale Nursing Home,* 457 S.E.2d 152 (W. Va. 1995), a case filed in state court involving the alleged discriminatory discharge of a nursing assistant by a privately owned and operated nursing home. In explaining the burden of proof carried by the plaintiff, the Supreme Court of Appeals of West Virginia ("WVSCA") noted that a claim under the WVHRA was evaluated using the same analytical framework and structures as those developed under Title VII, "at least where our statute's language does not direct otherwise." *Id.* at 159. Plaintiff suggests that this similarity in claims analysis is proof that the West Virginia Legislature intended to waive sovereign immunity in federal court.

Plaintiff's position is entirely without merit. The WVSCA's adoption of the federal judiciary's analytical framework in evaluating the merits of a discrimination claim is in no way equivalent to an express legislative waiver of sovereign immunity for such a claim in federal court. Therefore, the undersigned **FINDS** no evidence that the West Virginia Legislature intended to waive sovereign immunity in federal court for claims against the State of West Virginia under the WVHRA.

As to the second exception, Plaintiff asserts that Title VII "overrides" MU's sovereign immunity defense against Plaintiff's Human Rights Act claims. In support of that position, he relies on *Kerns v. Bucklew,* 357 S.E.2d 750, 754-55 (W. Va. 1987). Plaintiff argues that in *Kerns,* the WVSCA determined that a sovereign immunity defense in an employment discrimination case filed under the WVHRA was superseded by Title VII pursuant to the supremacy clause of the United States Constitution.

As pointed out by MU, the *Kerns* case did not involve the second type of exception to sovereign immunity available in federal court. In *Kerns*, the State of West Virginia's highest court addressed a state agency's sovereign immunity in a mandamus proceeding involving a monetary judgment recovered in a state proceeding based upon a violation of a state statute. The second exception discussed herein focuses instead on the Congress of the United States, its unequivocal intention to abrogate the States' sovereign immunity, and its constitutional authority to do so. Plaintiff offers no evidence of congressional intent or action to abrogate West Virginia's immunity from suit in federal court for claims arising under the WVHRA. In the absence of such congressional action, the second exception does not apply. *See, e.g., Jennings v. SUNY Health Science Center at Brooklyn,* 201 F. Supp.3d 332, 335 (E.D.N.Y. 2016) (holding that Congress had not passed any statutes abrogating New York's sovereign immunity from federal lawsuits arising under

New York's Human Rights Act; therefore, the federal district court did not have jurisdiction over those claims). Therefore, the undersigned **FINDS** that Congress has not abrogated MU's immunity from suit.

Lastly, Plaintiff argues that the third exception applies, because he is seeking prospective relief in the form of reinstatement of employment and tenure. MU correctly notes that this exception "does not permit judgments against state officers declaring that they violated federal law in the past and [it] has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth.,* 506 U.S. at 146. Instead, the exception is narrow; it is designed to provide "prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *McBurney v. Cuccinelli,* 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young,* 209 U.S. at 159–60). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *Id.* (citing *Ex Parte Young,* 209 U.S. at 155-156). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Here, Plaintiff attempts to sue MU, not an official authorized with carrying out an alleged unconstitutional policy or procedure. As a result, the undersigned **FINDS** that the third exception to sovereign immunity does not apply. *Lee-Thomas,* 666 F.3d at 249 (the lawsuit must name as a defendant a state official, not a state agency); *see also Thomas v. Nakatani,* 309 F.3d 1203, 1208 (9th Cir. 2002) (holding that the *"Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state

official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

Accordingly, with respect to the state-based claims Plaintiff has asserted against MU, the undersigned **FINDS** that MU has immunity under the Eleventh Amendment to the United States Constitution and no exception to that immunity exists in this case. As a result, the WVHRA claims against MU in Counts 1, 2, 3, 6, 7, 8, 9, and 10 should be dismissed against MU on the basis of sovereign immunity. Because MU is immune from litigation on the state-based claims, the undersigned need not address MU's additional argument regarding its inability to contract beyond the fiscal year.

### 2. *Retaliation under Title VII—Count 6*

MU also argues that Plaintiff's Title VII claim for retaliation asserted in Count 6 of the second amended complaint should be dismissed, because this Court recently determined that a similar claim against Defendants Shapiro and Primerano was not factually supported by the allegations of the proposed second amended complaint. In a recent PF&R, the undersigned found that the chronology of events as outlined in Plaintiff's proposed second amended complaint indicated that Defendants Shapiro and Primerano did not violate West Virginia's Whistle-Blower Act by terminating Plaintiff's employment contract on June 30, 2016, because they had notified Plaintiff of their intent to terminate his contract on that date well in advance of his first report of discrimination.

However, the PF&R is not determinative of Plaintiff's Title VII retaliation claim. Since the PF&R was issued, Plaintiff has filed his second amended complaint. The second amended complaint includes allegations that were not present in the proposed pleading. The undersigned **FINDS** that the allegations in the second amended complaint include supplemental facts, which when taken as true and construed in the light most favorable

13

to Plaintiff, state a plausible claim of retaliation sufficient to withstand a motion to dismiss.

Plaintiff states in the second amended complaint that at least one authorized representative of MU—Dr Niles, the former chair and associate dean for research and graduate education—assured Plaintiff that his tenure track would not begin until his laboratory was established, which meant that his employment contract would not expire until February 2017. (ECF No. 55 at 28-31). This assurance was allegedly made in 2009, early in the course of Plaintiff's employment with MU, and was purportedly confirmed in writing by electronic mail. According to Plaintiff, when Defendants Shapiro and Primerano stated in a March 2015 letter that Plaintiff's contract would end in June 2016 if he were not awarded tenure, they were mistaken.

The difference in opinions regarding the date on which Plaintiff's contract expired became an issue in February 2016 when it became clear that Plaintiff was not likely to receive tenure. Defendant Shapiro advised Plaintiff that he did not intend to recommend Plaintiff for tenure and had already discussed his decision with Defendant Gilbert, who agreed. Defendant Shapiro offered to accept Plaintiff's understanding of a February 2017 termination date if he agreed not to make a "fuss" about the denial of tenure.

In March 2016, Plaintiff sent Dr. Niles's email confirmation of the February 2017 contract expiration date to Defendant Gilbert. At the same time Plaintiff complained of being the victim of discrimination in the tenure review process. Plaintiff sent the Niles's email to Gilbert because Shapiro and Primerano were threatening him with the early termination date of June 30, 2016. Plaintiff alleges that although MU knew the June 30, 2016 termination date was erroneous—as was established by Dr. Niles's email—MU nevertheless seized upon the opportunity to use the early date as leverage in its efforts to

14

squelch Plaintiff's discrimination charge. At least one negotiation occurred thereafter between Plaintiff and counsel for MU at the request of Defendant Gilbert. Once Plaintiff filed a formal charge with the EEOC, MU was only willing to honor the February 2017 termination date if Plaintiff agreed to abandon his discrimination allegations and acquiesce to a termination of his relationship with MU. Plaintiff contends that when he refused to quietly accept the denial of tenure and drop the charge, MU retaliated by imposing the artificially expedited contract termination date. Assuming these allegations to be true, they are sufficient to state a potential claim of retaliation against MU under Title VII.

Notwithstanding the factual sufficiency of a Title VII retaliation claim, the undersigned **FINDS** that the claim in Count 6 charging MU with a violation of the WVHRA must be dismissed on the basis of sovereign immunity. As previously indicated, while Congress has expressly waived sovereign immunity for States under Title VII, neither Congress, nor the State of West Virginia, has waived West Virginia's immunity under the Eleventh Amendment on claims brought pursuant to the WVHRA.

### 3.  *Due Process Claims—Count 11*

In Count 11, Plaintiff alleges that MU denied him due process and deprived him of property and liberty interests guaranteed by the Fourteenth Amendment to the United States Constitution, the West Virginia Constitution, and Title 133 of West Virginia's Code of State Rules. Specifically, Plaintiff claims that MU rejected his tenure application after conducting a review that was tainted and biased; failed to provide him with timely notice of faculty non-retention; failed to offer him the one-year terminal contract normally given to faculty who are not awarded tenure; prematurely terminated his employment contract; terminated his contract before affording him the requisite due process hearing;

compromised the grievance process by appointing a biased level 1 hearing examiner and by participating in other irregularities at later steps in the process; and stigmatized him by abruptly discharging him shortly after denying him tenure—an action so out of the ordinary that other universities saw it as a "red flag."

MU contends that Plaintiff had no property interest in his employment position, or in tenure. Despite Plaintiff having no property interest, MU maintains that Plaintiff's application for tenure was given a fair and robust review and he was provided with every opportunity to grieve the final decision. Furthermore, MU asserts that Plaintiff fails to state a violation of a liberty interest, because MU did not publicly communicate the reasons for Plaintiff's discharge, nor did MU make any false statements in relation to Plaintiff's contract termination.

Plaintiff's due process cause of action is, in effect, a claim brought under § 1983. Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any State "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to assert a *prima facie* cause of action under § 1983, a plaintiff must show that: (1) a person deprived the plaintiff of a federally protected civil right, privilege or immunity, and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792 (D.S.C. Sept. 8, 2010); *see, also, American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999).

In *Will v. Mich. Dept. of State Police,* the Supreme Court of the United States

considered whether a State, "or an official of the State while acting in his or her official capacity," was a 'person' within the meaning of 42 U.S.C. § 1983. *Id.*, 491 U.S. 58, 60 (1989). After considering the language of the statute and its intent, the Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The Court reasoned that since "a suit against a state official in his or her capacity is not a suit against the official but rather a suit against the official's office, ... neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71.

As previously stated, MU is an arm of the State of West Virginia and, as a result, is not a person subject to suit under 42 U.S.C. § 1983. Moreover, as an arm of the State, MU "is entitled to the protection of Eleventh Amendment sovereign immunity," and no exception to immunity applies in this case. *Zeng,* 2018 WL 1410418, at *8 (citing *Kerr*, 2015 WL 1405537, at *9). Accordingly, the undersigned **FINDS** that MU is entitled to sovereign immunity against Plaintiff's due process claims and is also entitled to dismissal as it is not a person subject to suit under 42 U.S.C. § 1983.

## B. Defendant Gilbert

Plaintiff includes Defendant Gilbert in four counts of the second amended complaint. Gilbert does not address the counts separately in his Motion to Dismiss; rather, he argues broadly that he is immune from litigation under the doctrines of sovereign and qualified immunity, and to the extent he is not immune, Gilbert argues that Plaintiff fails to state viable claims against him.

With respect to Defendant Gilbert's sovereign immunity, the undersigned notes that Plaintiff names Gilbert as a defendant in both his personal capacity and in his official capacity as President of Marshall University. Sovereign immunity under the Eleventh

Amendment protects the State itself, as well as its agencies, divisions, departments, and officials. *Will,* 491 U.S. at 78; *see also Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities"). An officer of a State acting in his or her official capacity is entitled to sovereign immunity from claims for money damages. *Will,* 491 U.S. at 70. As the Supreme Court explained in *Will*, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Id.* at 71. It is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment ... when the action is in essence one for the recovery of money from the State, the State is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citations and markings omitted). Therefore, to the extent that Plaintiff seeks money damages from Defendant Gilbert in his official capacity, the undersigned **FINDS** that those claims are barred by sovereign immunity and should be dismissed.

On the other hand, under the *Ex Parte Young* exception, Defendant Gilbert may be sued in his official capacity for "prospective, injunctive relief ... to prevent ongoing violations of federal law." *McBurney,* 616 F.3d at 399 (citing *Ex Parte Young,* 209 U.S. at 159–60). To state a claim under the *Ex Parte Young* exception, Plaintiff must include factual allegations demonstrating that Defendant Gilbert has "proximity to and responsibility for the challenged state action"; has some duty in regard to the enforcement

of the action; and is threatening or is about to commence proceedings to enforce the unconstitutional action. *Id.* (citing *Ex Parte Young,* 209 U.S. at 155-156). However, the undersigned **FINDS** that Plaintiff has not included any allegations in the second amended complaint pertaining to Defendant Gilbert that would trigger this exception to sovereign immunity.

### 1. Discrimination Claims Under 42 U.S.C. § 1983—Counts 1 and 3

In Count 1, Plaintiff accuses Defendant Gilbert of imposing higher standards on Asian tenure applicants than are imposed on Caucasian applicants, and in Count 3, Plaintiff alleges that Gilbert intentionally manipulated the tenure review process, distorted information relevant to Plaintiff's tenure application, and arbitrarily undervalued his accomplishments and contributions with the intent to deny him tenure. Plaintiff claims that Gilbert's actions were motivated by a discriminatory animus toward Plaintiff based upon his race and national origin.

To prevail on a claim of racial or national origin discrimination, a plaintiff must show that:

> (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing up to his employer's expectations; and (4) similarly situated employees who were not members of the protected class received more favorable treatment.

*Supinger v. Virginia*, 259 F. Supp. 3d 419, 433 (W.D. Va. 2017) (citing *Holiday v. New Hanover Cty. Registrar of Deeds*, 317 Fed. Appx. 344, 345 (4th Cir. 2009)). To survive a motion to dismiss, a plaintiff is not required to demonstrate a *prima facie* case of discrimination. *See Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 515 (2002) ("[W]e hold that an employment discrimination plaintiff need not plead a prima facie case of

discrimination ...."). Rather, the plaintiff is required to include sufficient factual allegations in the complaint to state a plausible claim of discrimination.

The undersigned **FINDS** that Plaintiff includes enough facts in the second amended complaint to state a plausible claim of discrimination on the part of Defendant Gilbert acting in his personal capacity. Plaintiff alleges that he is Asian and a naturalized citizen of Chinese descent. He was paid less than his Caucasian counterparts; was denied a promised teaching assignment in favor of a Caucasian colleague; was held to higher standards for tenure due to his Asian race; and was denied tenure despite outperforming Caucasian tenure applicants. He claims that Defendant Gilbert was part of the tenure review process and ultimately made the final decision to deny Plaintiff's application for tenure. Defendant Gilbert made this decision even after being alerted to alleged discriminatory practices and irregularities in the tenure review process.

Defendant Gilbert asserts the affirmative defense of qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions may be protected from monetary damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects state agents in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the Supreme Court of the United States explained in *Pearson v. Callahan:*

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by the plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. If a court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

"[A] defendant can raise the qualified-immunity defense at both the motion to

dismiss and summary judgment stage." *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (citing *Tobey v. Jones,* 706 F.3d 379, 393–94 (4th Cir. 2013)). "So long as qualified immunity does not turn on *disputed facts,* 'whether the officer's actions were reasonable is a question of pure law.'" *Id.* (citing *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (*en banc* )). However, in many cases, "immunity is peculiarly well-suited for resolution at the summary judgment stage." *Id.* (citing *Willingham v. Crooke,* 412 F.3d 553, 558–59 (4th Cir. 2005)). As qualified immunity is designed to shield officials "not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Indeed, a rejection of qualified immunity requires that in the light of pre-existing law the unlawfulness [of a defendant's actions] must be apparent." *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013) (internal citations and quotations omitted).

Here, Plaintiff claims that notwithstanding his qualifications, which equaled or exceeded those of similarly situated Caucasian colleagues, he was denied tenure by Defendant Gilbert because Plaintiff was Asian and of Chinese descent. Plaintiff supports his claim with factual allegations demonstrating how he out-performed two similarly situated Caucasian colleagues who received tenure, when his application for tenure was denied. Plaintiff also provides factual allegations intended to show that Asian faculty at

MU are expected to perform at a higher level than non-Asians and that Defendant Gilbert was aware of these practices, participated in them, and ultimately made final decisions relying on them. Clearly, the right to be judged equally and fairly in the public employment arena, without racial discrimination, is sufficiently established that every reasonable university president would understand that requiring Asian tenure applicants to meet more rigorous standards than Caucasian applicants would violate that right of equality. Furthermore, taken in the light most beneficial to Plaintiff, he has stated sufficient facts that, if true, would establish the presence of discrimination in the tenure review process. Therefore, the undersigned **FINDS** that Defendant Gilbert's assertion of qualified immunity is not dispositive at this time.

### 2.  *Discrimination Claims Under WVHRA—Counts 1 and 3*

Defendant Gilbert also moves to dismiss claims under Counts 1 and 3 of the second amended complaint that assert violations of the WVHRA. Gilbert argues that the Act cannot form the basis of a cause of action against him, because he is not an "employer" subject to the mandates of the WVHRA. As this Court has both previously and recently confirmed, "[t]he West Virginia Supreme Court of Appeals has explicitly stated the WVHRA provides a cause of action against both employers and individual persons participating in ... unlawful discrimination." *Rowe v. Peoples Bancorp, Inc.*, No. CV 3:18-1186, 2018 WL 6681198, at *2 (S.D.W. Va. Dec. 19, 2018) (citing *St. Peter v. Ampak-Division of Gatewood Products, Inc.*, 484 S.E.2d 481, 489 (W. Va. 1997)); *Holstein v. Norandex, Inc.*, 461 S.E.2d 473, Syl. Pt. 3 (W. Va. 1995) ("The term 'person,' as defined and utilized within the context of the [WVHRA], includes both employees and employers.")); *see, also Evans v. Blackhawk Mining, LLC*, No. 2:15-CV-13339, 2015 WL 6511319, at *2 (S.D.W. Va. Oct. 28, 2015) ("Under the [WVHRA], an individual, including

23

a fellow employee, can be held liable for engaging in discriminatory practices."); *and Miller v. Fed. Exp. Corp.*, No. 2:12-CV-03461, 2014 WL 2117098, at \*8 (S.D.W. Va. May 21, 2014) ("It is clear that supervisors may be held liable for the discriminatory acts of their employer under the WVHRA. ... The Supreme Court of Appeals has held that "person" in this context refers to both employers and employees."). Thus, Defendant Gilbert's contention is simply incorrect.

In *Michael v. Appalachian Heating, LLC,* 701 S.E.2d. 116, syl. pt. 5 (W. Va. 2010), the WVSCA explained that the WVHRA, W. Va. Code § 5-11-9(7)(A) establishes three distinct causes of action against "any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution," making it an unlawful discriminatory practice to "[e]ngage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section." *Miller*, 2014 WL 2117098, at \*8 (quoting W. Va.Code § 5–11–9(7)). In order to state a *prima facie* case under the WVHRA, a plaintiff must show that (1) he is a member of a protected class; (2) his employer made an adverse employment decision that affected him; and (3) but for his protected status, the adverse decision would not have been made. *Burke v. Wetzel Cty. Comm'n*, 815 S.E.2d 520, 533 (2018). Plaintiff contends that Defendant Gilbert participated in perpetuating unequal standards for Asian tenure applicants and unfairly processed Plaintiff's application for tenure on the basis of his race and national origin. He provides factual allegations in support of his claims. Therefore, the undersigned **FINDS** that the WVHRA claims asserted in Counts 1 and 3 against Defendant Gilbert are

plausible and do survive a Motion to Dismiss. For the reasons previously outlined, Defendant Gilbert's affirmative defense of qualified immunity is not a sufficient basis upon which to dismiss the WVHRA claims at this stage of the proceedings.

### 3.  Count 10—Failure to Prevent Retaliation

In Count 10, Plaintiff claims that Defendant Gilbert violated 42 U.S.C. § 1986 by failing to take action to prevent Defendants Shapiro and Primerano from retaliating against Plaintiff by imposing an early termination of his contract. Defendant Gilbert argues that the  § 1986 claim should be dismissed against him, because it was filed after expiration of the one-year statute of limitations contained in 42 U.S.C. § 1986. Defendant Gilbert points out that the decision to deny Plaintiff tenure was made on April 30, 2016. Accordingly, Plaintiff had until April 29, 2017 in which to file suit under 42 U.S.C. § 1986. Plaintiff did not file the original complaint in this case until May 23, 2017. (ECF No. 2). Therefore, Gilbert contends, the § 1986 claim is barred.

In response, Plaintiff asserts that the denial of tenure was not the retaliatory act about which he complains; rather, Defendants Primerano and Shapiro retaliated against Plaintiff by terminating his contract on June 30, 2016, approximately eight months earlier than it was due to expire. Despite Plaintiff's numerous appeals to Defendant Gilbert alerting him to the threatened retaliation, Gilbert willfully opted not to intervene. As a result, Plaintiff's contract was wrongfully terminated. Plaintiff indicates that his original complaint was filed within the one-year limitation period, and his second amended complaint adding the § 1986 claim, (ECF No. 52, 52-1), relates back to the date of the original filing. Accordingly, Count 10 is timely. Defendant Gilbert does not contest Plaintiff's relation back argument, but argues that as the facts alleged by Plaintiff do not establish a retaliation claim by Shapiro and Primerano, Defendant Gilbert cannot

logically be held liable for failing to prevent retaliatory acts that did not occur.

> Title 42 U.S.C. § 1986 provides:
>
> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ....

42 U.S.C. § 1986 (2012). In order to succeed on a claim under § 1986, a plaintiff must first show that he has a cause of action under § 1985. *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."); *Burnett v. Sharma,* 511 F. Supp.2d 136, 145 (D.D.C. 2007) ("Because the complaint fails to state a claim under § 1985, plaintiff cannot maintain a claim under § 1986."). He must then demonstrate that the defendant had knowledge that the wrongs conspired to be done under § 1985 were about to be committed, and the defendant had the ability to prevent the wrongs, but neglected to do so. *Ogunsula v. Holder*, No. GJH-15-1297, 2015 WL 3892126, at *3 (D. Md. June 22, 2015), *aff'd,* 641 F. App'x 260 (4th Cir. 2016).

In this case, Plaintiff asserts a cause of action against Defendants Primerano and Shapiro under 42 U.S.C. § 1985(3), which states:

> **(3) Depriving persons of rights or privileges**
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person

> as an elector for President or Vice President, or as a Member of Congress of
> the United States; or to injure any citizen in person or property on account
> of such support or advocacy; in any case of conspiracy set forth in this
> section, if one or more persons engaged therein do, or cause to be done, any
> act in furtherance of the object of such conspiracy, whereby another is
> injured in his person or property, or deprived of having and exercising any
> right or privilege of a citizen of the United States, the party so injured or
> deprived may have an action for the recovery of damages occasioned by such
> injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege the

following elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific
> class-based, invidiously discriminatory animus to (3) deprive the plaintiff
> of the equal enjoyment of rights secured by the law to all, (4) and which
> results in injury to the plaintiff as (5) a consequence of an overt act
> committed by the defendants in connection with the conspiracy.

*Sines v. Kessler*, 324 F. Supp. 3d 765, 780 (W.D. Va. 2018) (citing *A Soc'y Without A*

*Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)). Plaintiff contends that Primerano

and Shapiro planned well in advance that they would deny Plaintiff's application for

tenure. They then set about to ensure that the application was denied by interfering with

the review process. Once they had achieved that goal, Defendants Shapiro and Primerano

schemed to terminate Plaintiff's employment contract early, denying him the typical one-

year terminal contract. When Plaintiff objected, they offered to give Plaintiff the

expiration date to which he was entitled, but only if he agreed to drop all claims that the

review process was discriminatory. When he refused, they handed him a letter on June

29, 2016 instructing him to turn over his keys and leave the premises on June 30, 2016.

Plaintiff claims that Defendant Gilbert knew that Defendants Shapiro and Primerano

intended to takes these steps to end Plaintiff's employment contract and failed to

intervene.

In their Motion to Dismiss, Defendants Shapiro and Primerano argue that

Plaintiff's proposed conspiracy claim under § 1985 should be denied on the ground of the intracorporate conspiracy doctrine, which holds that "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech., Inc. v. Aboud,* 313 F.3d 166, 179 (4th Cir.2002); *see, also, Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000) ("Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation."). The doctrine applies to public entities, as well as private corporations and public government entities. *Dickerson,* 200 F.3d at 767. The intracorporate conspiracy doctrine has two exceptions, however. *Facey v. Dae Sung Corp.,* 992 F. Supp. 2d 536, 542 (D. Md. 2014). "First, the doctrine is generally inapplicable where a coconspirator possesses a personal stake independent of his relationship to the corporation. Second, a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation." *Id.* (quoting *Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 353 (4th Cir. 2013)) (internal citations and markings omitted).

This is not the first time Defendants Shapiro and Primerano have made this argument. In response to Plaintiff's Motion for Leave to file a second amended complaint, the defendants contended that adding a § 1985 conspiracy claim was futile, because the intracorporate conspiracy doctrine precluded such a claim. However, in his reply, Plaintiff raised an exception to the doctrine, asserting that co-conspirators Primerano and Shapiro acted outside the scope of their employment with MU and in contravention of its policies when they retaliated against him by illegally terminating his employment contract. (ECF No. 45 at 4-5). In support, Plaintiff relied upon *Singh v. Nerhood,* which he claims "found a valid cause of action of conspiracy against members of Marshall University School of

Medicine who apparently acted outside the bounds of employment." *Id.* at 5. (citing *Singh,* No. 3:11-cv-00701, 2012 WL 4464025 (S.D.W. Va. Sept. 26, 2012)). In view of Plaintiff's argument, he was granted leave to amend his complaint and add a conspiracy claim under § 1985 against Defendants Primerano and Shapiro.

Now that the second amended complaint has been filed, rather than supporting the exception propounded by Plaintiff, the allegations include supplemental facts, which trigger application of the intracorporate conspiracy doctrine and preclude Plaintiff's § 1985 conspiracy claim. *See Ali v. Raleigh Cty.*, No. 5:17-CV-03386, 2018 WL 4101517, at *10 (S.D.W. Va. Aug. 28, 2018) ("Courts have applied [the intracorporate conspiracy] doctrine in the arena of civil rights cases, and 'the Fourth Circuit has consistently applied it in other contexts, including actions brought under [Sections] 1983 and 1985.'") (quoting *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004)). In the second amended complaint, Plaintiff adds that a separate decision not to recommend him for tenure was issued by MU's Personnel Advisory Committee; accordingly, the decision issued by Defendant Shapiro, who was the Dean of MU's School of Medicine, was not the sole opinion considered by the Tenure Committee. Plaintiff also states for the first time that Defendant Shapiro discussed his decision not to recommend Plaintiff for tenure with Defendant Gilbert, President of MU, who agreed with the decision, suggesting that Defendant Shapiro was not acting outside the scope of his employment. Only after this discussion did Defendant Shapiro delegate to Defendant Primerano, Interim Chair of the Department of Biochemistry and Microbiology, the task of handling issues related to Plaintiff's tenure application. While Plaintiff stated in the proposed amended complaint that he raised concerns about the fairness of the tenure decision to Defendant Gilbert, Plaintiff failed to add in the proposed pleading that on March 18, 2016, the day following

29

his contact with Defendant Gilbert, MU's General Counsel contacted Plaintiff to respond to his concerns. Accordingly, MU's legal counsel was engaged in ongoing discussions with Plaintiff regarding his tenure denial and contract termination prior to his first contact with the EEOC and the Public Employees Grievance Board.

Rather than supporting Plaintiff's earlier representation that Defendants Shapiro and Primerano were acting outside the scope of their employment, these new allegations indicate that the defendants were carrying out their designated job duties as Dean and Interim Chair, respectively, and were communicating with the chief operating officer of the corporation, Defendant Gilbert. Furthermore, Plaintiff includes no allegations in the second amended complaint that the defendants were acting outside the scope of their employment or were taking steps that were not authorized by MU. The absence of such allegations is striking when considering the attention given to the intracorporate conspiracy doctrine in the defendants' opposition to the motion for leave to amend. Construing the allegations of the second amended complaint in the light most favorable to Plaintiff, it is reasonable to infer that MU and its individual agents acted in concert on behalf of the corporation, MU, in terminating his employment contract on June 30, 2016. Such an inference is fatal to the § 1985 conspiracy count against Defendants Shapiro and Primerano.

Without a valid cause of action under § 1985, Plaintiff's claim against Defendant Gilbert under § 1986 cannot survive. *Womack v. Owens*, 736 F. App'x 356, 358 (4th Cir. 2018) ("Because the complaint does not adequately allege a § 1985 conspiracy, it cannot bring a claim under § 1986."); *Dunfee v. Glob. Contact Servs., LLC*, No. CIV.A. 2:11-00306, 2011 WL 5530270, at *4 (S.D.W. Va. Nov. 14, 2011) ("To effectuate a cause of action under § 1986, plaintiff must state a cause of action under 42 U.S.C. § 1985 ...

30

Because plaintiff has failed to allege a claim pursuant to § 1985, his § 1986 claim must correspondingly fail and is therefore dismissed.). Given the intracorporate conspiracy doctrine, Plaintiff fails to satisfy the elements of a conspiracy claim; therefore, the undersigned **FINDS** that the second amended complaint lacks factual allegations sufficient to state a plausible claim under Count 10.

### 4. Due Process Claim—Count 11

Plaintiff contends that there were irregularities in both the tenure review process and the grievance process. In regard to Defendant Gilbert, Plaintiff alleges that Defendant Gilbert failed to offer a one-year terminal contract, as required by West Virginia's Higher Education Policy Commission, participated in a flawed tenure review process, sanctioned the premature termination of his employment contract, denied Plaintiff a pre-termination due process hearing, and appointed a biased hearing officer in the post-termination proceeding.

The Fourteenth Amendment's due process protections apply only to recognized property and liberty interests, *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978). Without a protected interest, there is no right to due process of law. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1976). In order to possess a property interest, the individual "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. "To have a property interest subject to procedural [or substantive] due process protection, an individual must be entitled to a benefit created and defined by a source independent of the Constitution, such as state law." *Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1141 (4th Cir. 1990) (citing *Roth*, 408 U.S. at 577).

In *Siu v. Johnson,* 748 F.2d 238, 243 (4th Cir. 1984), the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") addressed the question of whether a faculty member's contractual employment status "as a classic probationary academic employee 'on the tenure track' but untenured," gave rise to a property interest for which any procedural protection was constitutionally due. The Court noted that some courts had treated such a position as no more than employment at will, which did not give rise to a protectible property interest beyond its stated terms. *Id.* The Court found this view to have merit, indicating that the probationary nature of the position "might well be viewed as creating in its holder no more than a unilateral expectation that in regular course the relationship might ripen, following expiration of the probationary term, into permanent employment, terminable thereafter only for cause." *Id.* However, the Court also recognized that other courts had intimated that this "expectancy" might be "elevated to constitutionally protectible property interest status by contractually binding provisions which, in some form or another, require a regularized decisional process for declining to award tenure." *Id.* Ultimately, the Fourth Circuit reiterated the rule set forth in *Roth*; "where a property interest—including one involving academic employment—is claimed to be derived from state law sources, it is obviously necessary to look to those sources to determine the general nature of the interest, for the process constitutionally due is dependent on that." *Siu,* 748 F.2d at 244 (citations omitted).

Forty years ago, in *State ex rel. McLendon v. Morton,* 249 S.E.2d 919, 925 (W. Va. 1978), the WVSCA resolved the question of whether the State's higher education procedures provided a tenure-track faculty member at a state college or university with a protected property interest in an award of tenure. The WVSCA held that a faculty member at a state college or university who satisfied the college or university's objective eligibility

requirements for tenure and submitted a tenure application had a "sufficient entitlement so that she could not be denied tenure on the issue of her competency without some procedural due process." *Id.* The degree of protection afforded to the individual depended upon an analysis of three distinct factors: (1) the private interests affected by the official action; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of any additional or substitute procedures; and (3) the government's interest, including the function involved and any extra burdens caused by using additional or substitute procedures. *Id.* at 925-26 (quoting *Waite v. Civil Service Commission*, 241 S.E.2d 164, syl. pt. 5 (W. Va. 1977)). The WVSCA concluded that minimal due process in this circumstance required "a notice of the reasons why tenure is not extended and a hearing with an opportunity to submit evidence relevant to the issues raised in the notice. The hearing tribunal should be unbiased. If the teacher demonstrates that the reasons are wholly inadequate or without a factual basis, the administration would be required to show the contrary." *Id.* at 926 (citing *Board of Regents v. Roth*, 408 U.S. at 585-86).

In this case, Plaintiff has stated sufficient facts to establish that he satisfied the objective eligibility standards for tenure at MU and, therefore, had at least a minimal property interest under *McLendon* in an award of tenure. Moreover, accepting the allegations in the complaint as true, Plaintiff has asserted enough facts to state a plausible claim that he was denied procedural due process. Plaintiff indicates that the tenure review process in his case was not performed in the standard fashion, as required by university policies and procedures, and was tainted by behind-the-scenes actions of certain defendants. Furthermore, Plaintiff offers a factual basis for his contentions that he was terminated for arbitrary and capricious reasons, was not offered a one-year terminal contract as mandated by the West Virginia Higher Education Policy Commission Rules,

was terminated before he could contest the denial of tenure, and experienced irregularities in the grievance process. Certainly while not determinative of the issue, the undersigned **FINDS** sufficient facts in the second amended complaint related to Plaintiff's claim of a due process violation affecting his alleged property interest to survive MU's motion to dismiss.

In contrast, the undersigned **FINDS** that Plaintiff's complaint lacks sufficient facts to state a plausible due process violation involving his liberty interests. Due process requires a hearing on the discharge of a government employee when the circumstances of the discharge implicate the employee's liberty interests. *Roth*, 408 U.S. at 572-73. A liberty interest "is implicated and the right to procedural due process required when government action threatens an employee's good name, reputation, honor, or integrity or his or her freedom to take advantage of other employment opportunities." *Boggess v. Hous. Auth. of City of Charleston*, 273 F. Supp. 2d 729, 747 (S.D.W. Va. 2003) (citing *Roth*, 408 U.S. at 573). "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007) (citing *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 n. 5 (4th Cir.1988)).

Plaintiff does not include any facts in the second amended complaint that explain the basis of his liberty interest claim; however, in his response to MU's motion to dismiss, Plaintiff provides information about two occurrences, which he believes support a liberty interest violation. First, Plaintiff complains that MU denied his tenure and then almost immediately terminated his employment, which he describes as "treatment far from the

normal practice and tradition of American Academic Institutions." (ECF No. 71 at 23). According to Plaintiff, most universities give faculty members who are denied tenure one year to seek comparable employment, as well as to challenge the tenure decision. Plaintiff describes MU's behavior in his case as a "red flag" and "turn-off" signal for prospective employers.

Second, Plaintiff states that when he was terminated from MU, he applied for unemployment benefits with the West Virginia Workforce Commission ("WVWC"). The WVWC sent a "Request for Separation Information" form to MU, which responded that Plaintiff was discharged after being "denied tenure by promotion and tenure committee." (*Id.* at 24). Plaintiff claims that MU's rapid termination of his employment and subsequent statement about his discharge have stigmatized him. As proof of his claim, Plaintiff alleges that prospective employers who initially responded to his resume lost interest after having a telephone interview, even those that scheduled in-person interviews for later. Plaintiff suspects that these prospective employers learned at some point after the telephone interview that Plaintiff was discharged for not receiving tenure.

While Plaintiff can probably satisfy the second prong of the *Sciolino* test, he simply cannot establish that being discharged for failing to obtain tenure creates a "stigma," nor can he demonstrate that describing the termination of his employment contract in that manner was false. Plaintiff's conclusory claim that the two-month time frame between the denial of tenure and his departure creates  a "red flag" to other employers is insufficient to state a plausible cause of action. Furthermore, being discharged for failing to obtain tenure is not "stigmatizing" in that such an occurrence does not imply a serious character defect such as dishonesty or immorality. Faculty members fail to secure tenure at colleges and universities across the country for a variety of reasons. As the West Virginia Code of

State Rules makes clear, tenure decisions are based on more than the academic competence of the applicant. Decisionmakers also consider the tenure profile of the institution, projected enrollment patterns, staffing needs, current and projected departmental mission, and the preservation of opportunities for the infusion of new talent. W. Va. C. St.R. § 133-9-9.2. Accordingly, the second amended complaint fails to include any allegations upon which the Court can reasonably find that informing prospective employers that Plaintiff's contract was terminated due to a denial of tenure is stigmatizing. In any event, such statements are true. Therefore, the undersigned **FINDS** that Plaintiff cannot satisfy all of the prongs of the *Sciolino* test and thus fails to state a plausible claim of a due process violation based upon a liberty interest.

Having found a plausible claim with respect to Plaintiff's property interest, the undersigned considers Defendant Gilbert's affirmative defense of qualified immunity. If Plaintiff's factual allegations are true, then he was not afforded due process, because the denial of his request for tenure was arbitrary and capricious, and he was denied an unbiased pre-termination process by Defendant Gilbert. The right to due process in this situation has been recognized in West Virginia for decades. As such, any reasonable university president should have realized that the tenure application process required adherence to the principles of due process. Therefore, the undersigned **FINDS** that the affirmative defense of qualified immunity is not dispositive at this time.

### C.  Defendants Hardman and Egleton

Plaintiff's second amended complaint includes three counts against Defendants Hardman and Egleton—Counts 1, 2, and 3—all of which allege discrimination in the tenure review process in violation of the WVHRA and under 42 U.S.C. § 1983. Defendants Hardman and Egleton argue that these counts, and thus the second amended complaint

in its entirety, should be dismissed against them on three grounds: sovereign immunity; qualified immunity; and failure to state a claim under the WVHRA as they are not "employers."

To the extent that Plaintiff seeks money damages from Defendants Hardman and Egleton in their official capacities, those claims should be dismissed under the Eleventh Amendment's sovereign immunity. *Will,* 491 U.S. at 78. Likewise, Plaintiff has not included any allegations in the second amended complaint against these defendants that would satisfy an exception to sovereign immunity for non-monetary claims. Therefore, the undersigned **FINDS** that claims against these defendants in their official capacity should be dismissed.

In regard to the discrimination claims, Plaintiff alleges that Defendant Hardman was the chair of the Departmental Promotion and Tenure Committee and wrote the Committee's review of Plaintiff's application. Defendant Egleton was the designated primary reviewer of Plaintiff's application for the School of Medicine's Personnel Advisory Committee. According to Plaintiff, the reviews prepared by Defendants Hardman and Egleton contained intentional errors and distorted facts designed to sabotage Plaintiff's opportunity for tenure. For example, the reviews stated that Plaintiff had only 10 or 11 hours of medical teaching when he actually averaged 17 hours; Defendant Hardman's review indicated that Plaintiff had 5 hours of graduate teaching when he actually had 20.83 hours; and Defendant Hardman misstated Plaintiff's teaching effort in his area of expertise. Plaintiff claims that Defendants Hardman and Egleton gave him arbitrary and unreasonably low research evaluations despite Plaintiff being the only faculty member published in a prestigious journal. Plaintiff accuses Defendant Hardman of distorting evidence to justify his negative evaluation after being improperly informed by Defendant

Primerano that Primerano had already decided not to recommend Plaintiff for tenure. Plaintiff also claims that the defendants required more research funding and higher productivity from Asians in general and regularly recommended Caucasians for tenure although they performed at much lower levels than those at which he was expected to perform. Plaintiff claims that the higher standards, the undervaluing of his achievements, and the distortion of his numbers were all designed to justify the decision to deny him tenure, an outcome sought by the defendants because they did not want to award tenure to a Chinese faculty member.

These allegations, taken as true and in the light most favorable to Plaintiff, are sufficient to state a plausible claim against Defendants Hardman and Egleton under § 1983 and the WVHRA. As explained previously, individuals such as supervisors and co-workers may be held liable under the WVHRA; accordingly, the argument that defendants are not "employers" covered by the WVHA is not persuasive. Therefore, the undersigned **FINDS** that Plaintiff has asserted sufficient facts to state plausible claims against Defendants Hardman and Egleton in Counts 1, 2, and 3 of the second amended complaint. In regard to the affirmative defense of qualified immunity, the undersigned **FINDS** that the appropriateness of that defense cannot be determined on the current facts. If Plaintiff's allegations are true and Defendants Hardman and Egleton judged Plaintiff's tenure application using harsher and more exacting standards and intentionally distorted Plaintiff's performance measures to undervalue his achievements before the review committees, all with the goal of preventing him from obtaining tenure due to his race and national origin, then Defendants Hardman and Egleton would not be entitled to qualified immunity.

### D.  Defendants Shapiro and Primerano

Plaintiff names Defendants Shapiro and Primerano in four counts—Counts 1, 2, 3, and 4—alleging discrimination in the tenure review process in violation of the WVHRA and under 42 U.S.C. § 1983. In Counts 5 and 6, Plaintiff claims that Defendants Shapiro and Primerano conspired to retaliate and retaliated against Plaintiff for exercising his right to oppose unlawful discrimination. Plaintiff also entitles Count 5 as a conspiracy "for breach of contract" referring to his employment contract with MU. Plaintiff alleges in Count 7 that Defendants Primerano and Shapiro breached the contract that Plaintiff had with MU by terminating his employment early, and this breach violated the WVHRA and other federal rights being pursued under § 1983. In Count 8, Plaintiff claims that he was hired as the successor to Dr. Jackson to teach Immunology, but when Dr. Jackson retired, Defendants Shapiro and Primerano gave the teaching opportunity to a Caucasian faculty member instead of Plaintiff in violation of the WVHRA and under § 1983. Similarly, Plaintiff claims that Defendants Shapiro and Primerano discriminated against him by paying him the lowest salary of three similarly situated employees, although Plaintiff was the most experienced and should have received the highest salary. Plaintiff contends that Defendants Shapiro and Primerano paid him less because of his race and national origin in violation of the WVHRA and under § 1983. Finally, in Count 11, Plaintiff alleges that Defendants Shapiro and Primerano violated his rights under the Fourteenth Amendment to the United States Constitution and under the West Virginia Constitution in the tenure review process and in the subsequent grievance process, denying him property interests without due process. He also claims that he was deprives of a liberty interest without due process in the way that his contract termination was handled.

In their Motion to Dismiss, Defendants Shapiro and Primerano raise five broad

grounds for dismissal. First, they argue that all claims against them in their official capacities should be dismissed pursuant to the doctrine of sovereign immunity. As with the other individual defendants, the undersigned agrees that, to the extent Plaintiff seeks money damages from Defendants Shapiro and Primerano in their official capacities, they are immune from liability under the Eleventh Amendment. As with the other individual defendants, while Plaintiff asks for non-monetary relief at various places in the complaint (renewal on one-year employment contract; tenure), he does not include any allegations in the second amended complaint identifying the official or officials that he contends has proximity to the challenged act and authority to enforce the act. Plaintiff argues that he seeks prospective relief, but does not address the defendants' argument that tenure and contract renewal are not prospective *injunctive* relief, which is all that is permitted by the *Ex Parte Young* exception. Accordingly, based upon the allegations in the second amended complaint, the undersigned **FINDS** that these defendants are entitled to sovereign immunity from claims asserted against them in their official capacities, and there are no claims stated as to these defendants for which an exception to sovereign immunity would apply.

Second, Defendants Shapiro and Primerano contend that Plaintiff's breach of contract claims against them must be dismissed, because they never entered into any contract with Plaintiff. Defendants reason that if they had no contract with Plaintiff, they obviously could not have breached a contract with him. Along that same line of thought, Defendants Shapiro and Primerano assert that Plaintiff's retaliation claims against them must be dismissed. Defendants point out that Plaintiff alleges the retaliatory act was termination of his employment contract; however, neither Defendant Shapiro, nor Primerano employed Plaintiff. Consequently, they could not have terminated the

contract. Additionally, Defendants argue that the alleged "early" termination of Plaintiff's contract could not have been in retaliation for Plaintiff's accusations of discrimination, because the potential termination date was communicated to Plaintiff more than a year before he first suggested a discrimination in the tenure review process.

Third, Defendants Shapiro and Primerano assert the intracorporate conspiracy doctrine as a basis to dismiss Plaintiff's claims that the defendants conspired to deprive him of his constitutional rights and to retaliate against him. Defendants Shapiro and Primerano emphasize that Plaintiff makes no allegations in the second amended complaint that they had a personal stake in the outcome of his tenure application, or that they took actions that were not authorized by MU. Defendants argue that, to the contrary, the allegations in Plaintiff's second amended complaint demonstrate that Defendants Shapiro and Primerano were at all times acting as agents and employees of MU when dealing with Plaintiff and addressing his tenure and employment issues.

Fourth, Defendants Shapiro and Primerano raise the affirmative defense of qualified immunity, although they do not apply the defense to any particular cause of action or statement of facts. Instead, they simply argue that because they were performing discretionary duties on behalf of MU when considering Plaintiff's tenure application, they should be immune from liability. Of course, qualified immunity does not protect state officials performing discretionary functions when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. For that reason, the application of the immunity depends upon the particular facts of the case and the nature of the right asserted by the plaintiff.

Finally, Defendants Shapiro and Primerano contend that they should be dismissed

from all claims asserted under the WVHRA, because they are not "employers" subject to the Act. Defendants argue that since the mandates of the WVHRA do not apply to them, they cannot be held liable for allegedly violating them.

### 1. Discrimination Claims Under 42 U.S.C. § 1983—Counts 1, 2, 3, 4, 8, and 9

Plaintiff claims that in the tenure review process, Defendants Shapiro and Primerano intentionally and maliciously downgraded his performance and qualifications and inflated the qualifications and performance of Caucasian tenure applicants. According to Plaintiff, these distortions were motivated by the defendants' discriminatory animus toward Plaintiff's race and national origin. Plaintiff further alleges that Defendants Shapiro and Primerano set higher standards for Asian applicants, provided him with sub-standard equipment and supplies making it harder for him to succeed, and interfered with the review process by persuading other reviewers to under-rate Plaintiff's performance. In addition, Plaintiff claims that Defendants Primerano and Shapiro denied him a teaching assignment that he was supposed to receive; instead, giving that opportunity to a Caucasian colleague. Lastly, Plaintiff alleges that he was paid less than Caucasian faculty members in the same department who had less experience in research and education.

Taking these allegations as true, the undersigned **FINDS** that Plaintiff includes sufficient facts in the second amended complaint to state a plausible claim of discrimination on the basis of race and national origin against Defendants Shapiro and Primerano in Counts 1, 2, 3, 4, and 8. On the other hand, Plaintiff does not state a plausible claim against the defendants in Count 9, as Plaintiff provides no factual basis upon which the Court can conclude that Defendants Shapiro and Primerano played any

part in determining the salary paid to Plaintiff by MU. As to the affirmative defense of qualified immunity asserted by Defendants Shapiro and Primerano, the facts asserted by Plaintiff are sufficient to overcome that defense at this stage of the proceedings. If Plaintiff is able to prove his assertion that the defendants maliciously interfered with Plaintiff's application for tenure and the tenure review process and then took steps to effect Plaintiff's removal from the faculty of MU's Medical School out of a discriminatory animus based on Plaintiff's Asian race and Chinese origin, then that qualified immunity clearly will not be an available defense. Therefore, the undersigned **FINDS** this case requires factual development before the applicability of the qualified immunity defense can be appropriately evaluated.

### 2. Discrimination Claims Under the WVHRA—Counts 1, 2, 3, 4, 8, and 9

As discussed in section III.B.2., *supra*, individuals, including supervisors, can be held liable under the WVHRA. The factual allegations contained in the second amended complaint establish the basic elements of a discrimination case under the Act. Plaintiff states that he is a member of a protected class (Asian, Chinese); he was treated less favorably at work by the defendants, was denied tenure, and subsequently was terminated from employment; and but for his minority status in this country, he would not have suffered these adverse employment conditions. *See Burke*, 815 S.E.2d at 533. Therefore, the undersigned **FINDS** that Plaintiff states a plausible cause of action of discrimination on the part of Defendants Shapiro and Primerano under the WVHRA in Counts 1, 2, 3, 4, and 8. Given the absence of a factual basis tying the defendants to salary decisions at MU, however, the undersigned **FINDS** that Plaintiff fails to state a claim against the defendants in Count 9. For the reasons previously stated, the undersigned further **FINDS**

that Defendants' qualified immunity defense is premature.

### 3. Conspiracy—Count 5

In Count 5, Plaintiff alleges that Defendants Shapiro and Primerano conspired to threaten Plaintiff with early termination of his employment contract in violation of 42 U.S.C. § 1985. As more fully explained in Section III.B.3, *supra*, the undersigned **FINDS** that Count 5 should be dismissed on the ground that it is precluded by the intracorporate conspiracy doctrine, which holds that "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech., Inc. v. Aboud,* 313 F.3d at 179. The chronology of events recounted by Plaintiff in the second amended complaint demonstrate that Defendants Shapiro and Primerano were acting within the scope of their job duties when addressing Plaintiff's tenure application and termination. MU's highest operating official, President Gilbert, and MU's legal counsel were involved in the tenure discussions and were aware of the steps being taken by Defendants Shapiro and Primerano to effect termination of the employment contract with Plaintiff. MU's legal counsel, who was acting on the University's behalf, knew that the employment contract was scheduled to end on June 30, 2016. Plaintiff includes no allegations in the second amended complaint that Defendants Shapiro or Primerano had a personal stake in the outcome of Plaintiff's tenure or employment, nor has Plaintiff alleged that either defendant was acting outside of the scope of his authority. Accordingly, the undersigned **FINDS** that the actions of Defendants Shapiro and Primerano, even if taken in concert, cannot constitute an actionable conspiracy due to the intracorporate conspiracy doctrine.

### 4. Retaliation and Breach of Contract—Counts 6 and 7

In Count 6, Plaintiff complains that Defendants Primerano and Shapiro retaliated

against him by terminating his employment contract eight months early. Plaintiff contends that the early termination was punishment for his refusal to withdraw a grievance he had filed with the PEGB and a charge he had lodged with the EEOC claiming racial discrimination in the tenure review process. Plaintiff further alleges in Count 7 that Defendants Primerano and Shapiro illegally breached his contract with MU by terminating it early. In response, Defendants Primerano and Shapiro argue that they could not have breached the contract or retaliated with termination of the contract, because the contract was between MU and Plaintiff. As such, Defendants Primerano and Shapiro, who were not parties to the employment contract, were not in a position to breach or terminate it.

Plaintiff clarifies in his response to the Motion to Dismiss that he is not asserting a cause of action for breach of contract. Instead, he is alleging a violation of his constitutional right to be free from retaliation when reporting acts of discrimination. He explains that the breach of contract was the retaliatory act. Given that explanation, the undersigned **FINDS** the breach of contract claim set forth in Count 7 to be an unnecessary  duplication of the retaliation claim set forth in Count 6. Plaintiff cannot maintain a breach of contract claim against Defendants Primerano and Shapiro as they were not parties to Plaintiff's employment contract.

Turning then to Count 6, Plaintiff alleges that Defendants Primerano and Shapiro prepared a letter dated March 24, 2015 advising Plaintiff that his contract would expire on June 30, 2016.  Since Plaintiff asserts that June 30, 2016  was an incorrect expiration date, he speculates that the letter was prepared as groundwork so Defendants could use an early termination of his contract as a means to force him to accept a denial of tenure. Plaintiff then recounts a somewhat convoluted story, but essentially suggests that he

demonstrated to the defendants, likely including Defendants Primerano and Shapiro, that Dr. Niles agreed to a February 2017 expiration date. Although the facts are not crystal clear in the second amended complaint, the undersigned takes into account the Plaintiff is *pro se.* Construing the facts in the light most beneficial to him, the undersigned **FINDS** that Plaintiff's second amended complaint states a sufficiently plausible claim of retaliation to survive the defendants' motion to dismiss.  Once again, because this claim requires factual development, the undersigned **FINDS** that Defendants' affirmative defense of qualified immunity is premature.

### 5.  Due Process Claims—Count 11

As with Defendant Gilbert, Plaintiff alleges that Defendants Primerano and Shapiro failed to offer a one-year terminal contract, as required by West Virginia's Higher Education Policy Commission, and participated in a flawed tenure review process. They failed to timely notify Plaintiff of non-retention and failed to provide him with a fair pre-termination due process hearing. For the reasons discussed in Section III.A.4, *supra*, the undersigned **FINDS** that the facts alleged by Plaintiff, taken as true and construed in the light most favorable to him, are sufficient to state a plausible claim of a due process violation by Defendants Shapiro and Primerano with respect to a property interest, but not with respect to a liberty interest. Plaintiff includes no allegations in the second amended complaint pertaining to Defendants Shapiro and Primerano that suggest that they made any false statements related to Plaintiff's termination that would trigger  due process related to his liberty interest.

Having found a plausible claim, the undersigned considers the defendants' affirmative defense of qualified immunity. If Plaintiff's factual allegations are true, then he was not afforded due process, because the denial of his request for tenure was arbitrary

46

and capricious, and he was denied an unbiased pre-termination process by the defendants. The right to due process in this situation has been recognized in West Virginia for decades. As such, any reasonable university dean and department chair should have realized that the tenure application process required adherence to the principles of due process. Therefore, the undersigned **FINDS** that Defendants are not entitled to qualified immunity at this stage of the litigation.

## VI.    <u>**Proposal and Recommendations**</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following:

1.      That Marshall University's Motion to Partially Dismissal [sic] the second amended complaint, (ECF No. 66), be **GRANTED,** in part, and **DENIED,** in part. The Motion be granted as to the claims in Counts 1, 2, 3, 6, 7, 8, and 9, which are asserted under the WVHRA, and as to the claims asserted in Count 11, and that all of these claims be **DISMISSED**, with prejudice, on the basis of sovereign immunity. The Motion be denied as to the claims asserted in Counts 1, 2, 3, 6, 7, 8, and 9 under Title VII, and those claims be permitted to proceed for further discovery.

2.      That the Motion to Dismiss on Behalf of Jerome A. Gilbert, (ECF No. 73), be **GRANTED**, in part, and **DENIED,** in part. The Motion be granted as to Count 10, and that Count be dismissed, with prejudice. The Motion to be granted as to the liberty interest claim in Count 11, and that claim be dismissed, with prejudice. The Motion be denied as to Counts 1, 3, and as to the property interest claim of Count 11, and those claims be permitted to proceed for further discovery.

3.      That the Motion to Dismiss on Behalf of Dr. W. Elaine Hardman and Dr. Richard Egleton, (ECF No. 75), be **DENIED**, and Plaintiff be permitted to conduct

discovery on his claims against these defendants asserted in Counts 1, 2, and 3.

4.    That the Motion to Dismiss on Behalf of Dr. Joseph Shapiro and Dr. Donald Primerano, (ECF No. 77), be **GRANTED**, in part, and **DENIED**, in part. The Motion be granted as to Counts 5, 7, and 9, and those Counts be dismissed, with prejudice. The Motion be granted as to the liberty interest claim in Count 11, and that claim be dismissed, with prejudice. The Motion be denied as to the discrimination claims asserted in Counts 1, 2, 3, 4, and 8; the retaliation claim in Count 6; and the property interest claim in Count 11, and those claims be permitted to proceed for further discovery.

5.    That all claims for money damages against the individual defendants in their official capacities be dismissed, with prejudice, on the ground of sovereign immunity. In regard to claims for prospective relief, Plaintiff has not included allegations in the second amended complaint identifying any particular defendant as an official responsible for enforcing an unconstitutional policy; therefore, Plaintiff has yet to state a claim against any of the individual defendants that would fall within an exception to sovereign immunity.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (for the filing of objections) and three days (if this document was received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the

48

presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:**  February 5, 2019

Cheryl A. Eifert
United States Magistrate Judge