IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**WEI-PING ZENG,**

      **Plaintiff,**

v.                                        **Case No.: 3:17-cv-03008**

**MARSHALL UNIVERSITY,**
**DR. JEROME A. GILBERT;**
**DR. JOSEPH SHAPIRO;**
**DR. W. ELAINE HARDMAN;**
**DR. DONALD A. PRIMERANO;**
**and DR. RICHARD EGLETON,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending is Plaintiff's Motion to Modify Amended Complaint and Join Defendants. (ECF No. 173). Defendants have filed a Response in Opposition to the Motion, (ECF No. 187), and Plaintiff has filed a reply memorandum. (ECF No. 192). The undersigned has thoroughly considered the issues and finds no need for oral argument. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and has been assigned by standing order to the undersigned United States Magistrate Judge for proposed findings of facts and recommendations ("PF&R") for disposition. For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **DENIED**.

I.   **Relevant History**

Plaintiff initiated this civil action on May 23, 2017 against Marshall University,

complaining that he had been wrongfully denied tenure in the University's Department of Biochemistry and Microbiology based upon racial and national origin discrimination. (ECF No. 2). On October 27, 2017, while Marshall University's Motion to Dismiss was pending, Plaintiff filed his first motion for leave to amend the complaint. (ECF No. 28). In his motion, Plaintiff sought to add five individual defendants and multiple state and federal causes of action. On April 6, 2018, the undersigned issued a PF&R suggesting that Plaintiff be permitted to amend his complaint, at least in part. (ECF No. 51). Before the presiding District Judge could accept or reject the PF&R, Plaintiff filed a second motion for leave to amend the complaint. (ECF No. 52).

In Plaintiff's second motion for leave to amend the complaint, he explained that he had modified his first amended complaint to account for some of the issues raised in the PF&R, and he also wished to add two new causes of action in his proposed second amended complaint. (ECF No. 53 at 2). On April 27, 2018, the District Judge adopted the PF&R allowing portions of the proposed first amended complaint to be added. (ECF No. 54). That same day, Plaintiff's second amended complaint was filed. (ECF No. 55). Not surprisingly, the defendant expressed confusion regarding which version of the amended complaint was officially pending. (ECF No. 56). Accordingly, an Order was entered (1) granting Plaintiff's motion for leave to file the second amended complaint, (2) filing the second amended complaint, and (3) allowing the defendant additional time to answer or otherwise respond to the second amended complaint. (ECF No. 58).

By this time, the case had been pending for nearly one year. During that period, there had been three versions of the complaint filed. The first version included one defendant and four counts, while the second amended complaint (the third version) contained six defendants and eleven counts. (ECF Nos. 2, 55). On June 15, 2016, the undersigned held

a status conference and entered a scheduling order. (ECF Nos. 69, 70). Because the parties had already engaged in a lengthy grievance process and performed extensive briefing on Defendant's Motion to Dismiss and Plaintiff's Motions for Leave to Amend, and given that the complaint had already been amended twice, no additional time was given for amending the pleadings. The parties were allowed approximately seven months to conduct discovery.

On January 8, 2019, the undersigned held a final discovery conference and motions hearing. (ECF No. 166). At this hearing, Plaintiff indicated that he intended to move for leave to amend his complaint for a third time in order to add additional defendants and a new cause of action. By this time, Plaintiff's case had been pending for over nineteen months. On January 11, 2019, Plaintiff filed the instant Motion to Modify Amended Complaint, which is in fact a motion for leave to file a third amended complaint.

## II. <u>Proposed Third Amended Complaint and Grounds for Motion</u>

Plaintiff seeks to add four new defendants: Mr. F. Layton Cottrill, Jr.; Mr. Bruce Felder; Ms. Katherine Hetzer; and Ms. Tracey Burriss. (ECF No. 173-1 at 1). Mr. Cottrill is General Counsel for Marshall University. Mr. Felder, Ms. Hetzer, and Ms. Burriss are employed in Marshall University's Human Resources Department.

Plaintiff also wishes to add two new causes of action, which he lumps together into one count—Count 12. (*Id.* at 48-50). First, he asserts a claim of defamation against Marshall University and individual defendants Primerano, Shapiro, Felder, Hetzer, and Burriss. (*Id.* at 49). Second, he alleges tortious interference with prospective employment opportunities by the same six defendants. (*Id.* at 49-50). Plaintiff frames these causes of actions as claims pursuant to 42 U.S.C. § 1983 and violations of the Constitutions of the United States and the State of West Virginia, although they are actually nothing more

3

than claims arising under West Virginia tort law.

The factual basis of Plaintiff's defamation claim stems from a July 12, 2016 form completed by Katherine Hetzer allegedly under the direction of Bruce Felder. (ECF No. 173-1 at 32). The form was created by Workforce West Virginia's Unemployment Compensation Division and was entitled "Request for Separation Information." (ECF No. 173-2 at 1). After Plaintiff's contract with Marshall University was terminated, he filed a claim for unemployment compensation benefits. Plaintiff advised Workforce West Virginia that he had been employed by Marshall University from 9/1/2009 through 6/30/2016 and was separated from his employment due to a "lack of work." (*Id.*). Workforce West Virginia's Unemployment Compensation Division then sent the "Request for Separation Information" form to Marshall University for completion as part of Plaintiff's unemployment benefits claims process. Marshall University was asked to provide certain information, including the reason for Plaintiff's separation from employment. Ms. Hetzer marked that Plaintiff was discharged from employment and explained that the incident triggering discharge was the denial of Plaintiff's application for tenure by the Promotion and Tenure Committee. (*Id.*). Plaintiff contends that by describing his separation from employment as a "discharge," Ms. Hetzer implied that Plaintiff was fired for misconduct, an implication that carried serious consequences, such as the potential loss of unemployment compensation benefits and the inability to find other work. (ECF No. 173-3 at 1).

With respect to the tortious interference claim, Plaintiff states that on June 19, 2018, Marshall University and Tracy Burriss, again allegedly acting under the direction of Bruce Felder, made false statements to Allison & Taylor, Inc., a professional reference company hired by Plaintiff to check the reference given about him by Marshall University. (ECF No.

4

173-1 at 33). According to Plaintiff, Ms. Burriss falsely reported to Allison & Taylor that Marshall University had no record of Plaintiff's employment, refusing to confirm his history of working there. (*Id.*). Plaintiff attaches a report from Allison & Taylor, which reflects that Ms. Burriss searched, but could not find Plaintiff's records in Marshall University's employee database when she was contacted by Allison & Taylor for a reference regarding Plaintiff. Nevertheless, Ms. Burriss did not dispute that Plaintiff had been an employee; instead, she explained that she could not locate his record by searching his name and offered to search again using his social security number. (ECF No. 173-6). However, neither Plaintiff, nor Allison & Taylor ever provided Plaintiff's social security number to Ms. Burriss. (*Id.* at 2).

Lastly, Plaintiff requests to make "modifications" to his existing complaint. He wants to add the words "malicious" or "maliciously" to every count alleged in the second amended complaint in order to recover punitive damages. Furthermore, Plaintiff wants to add a factual allegation to Count 11, which alleges due process violations, stating that Marshall University further violated Plaintiff's rights by submitting its proposed Findings of Fact and Conclusions of Law to the Grievance Board director instead of the administrative law judge in an effort to exert pressure on the judge to rule favorably for Marshall University. Plaintiff also wants to add an allegation to Count 11 that Marshall University and its Human Resources employees made false statements about his employment and contract termination. His final modification is to add Mr. Cottrill and the human resources employees as defendants in Count 11, arguing that Mr. Cottrill shares responsibility for Mr. Hensley's appointment as the Level 1 grievance proceeding examiner. Plaintiff states no reason for adding the other three defendants to Count 11.

Plaintiff argues that the Court should grant him leave to amend his complaint,

5

because Fed. R. Civ. P. 15 favors liberal amendments. He also contends that this amendment would relate back to the filing of the initial complaint, and since his new causes of action arise from the facts related in his original complaint, they are timely asserted as "occurrences attempted to be set out in the original pleading." (ECF No. 178 at 3). Plaintiff does not provide much of an explanation as to why he waited so late in the proceedings to raise these claims, except to say that he believed he should wait until discovery was nearly completed.

In response, the defendants assert a number of reasons for denying Plaintiff's motion for leave to amend. Defendants argue that the motion is dilatory, having been brought late in the case and well after extensive briefing of the issues. In addition, Defendants maintain that Plaintiff fails to state factual allegations giving rise to plausible claims of defamation and tortious interference. Defendants also allege affirmative defenses of absolute, sovereign, and qualified immunity, as well as the statute of limitations bar.

### III. Standard of Review

Rule 15(a)(2) of the Fed. R. Civ. P. provides that the Court should "freely give leave" to file an amended complaint "when justice so requires." *See Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."). Generally, leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root,*

6

*Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir. 2007)). "In determining whether a proposed amendment is futile, a court may consider whether the proposed amendment could withstand a motion to dismiss." *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10CV653, 2010 WL 3522084, at *2 (E.D. Va. Sept. 1, 2010) (citing *Perkins v. United States,* 55. F .3d 910, 917 (4th Cir. 1995) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); *also Johnson,* 785 F.2d at 510 (holding that a motion for leave to amend should be denied "when the proposed amendment is clearly insufficient or frivolous on its face."); *Jones v. N.Y. Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999) (finding that amendments subject to "immediate dismissal" for failure to state a claim are "futile" and should not be allowed).

### IV. Discussion

Plaintiff's request for leave to file a third amended complaint should be denied for multiple reasons, but the primary reason is that the proposed amendments to the second amended complaint fail to state plausible claims that can withstand a motion to dismiss. To begin, Plaintiff accuses Marshall University of defamation and tortious interference, both of which are claims arising under state law. *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 691 (4th Cir. 2003) ("A defamation claim is, at its root, a state law tort claim."); also *Dashields v. Robertson*, 215 F.3d 1318 (4th Cir. 2000) ("[W]e agree with the district court that Appellee's claims of defamation, false-light invasion of privacy, and tortious interference with an employment relationship 'are, in form and substance, garden variety state tort claims.'"). As has been repeatedly stated, Marshall University is entitled to sovereign immunity in federal court against state law claims, regardless of their nature,

7

unless an exception to immunity applies; no exception applies. *Sarkissian v. W. Virginia Univ. Bd. of Governors*, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *11 (N.D.W. Va. May 3, 2007) (holding that "[s]tate agencies [like West Virginia University] have Eleventh Amendment immunity from suit by private citizens raising state claims [such as defamation] in federal court."). Therefore, Plaintiff's "new" claims against Marshall University are subject to immediate dismissal.

With respect to Defendants Primerano, Shapiro, Gilbert, and Cottrill, Plaintiff also accuses them of defamation and tortious interference, but fails to include any factual allegations connecting these defendants to the Workforce West Virginia form or the Allison & Taylor communication. Consequently, the new causes of action against these individual defendants require summary dismissal, as well.

As to the remaining three proposed defendants—Hetzer, Felder, and Burris—Plaintiff entirely fails to state viable claims of defamation and tortious interference with employment opportunities. Contrary to Plaintiff's contention, claims of defamation and tortious interference do not give rise to causes of action under 42 U.S.C. § 1983, as they are not grounded in federal or constitutional law. Instead, these claims are creatures of state tort law. *Paul v. Davis,* 424 U.S. 693, 712 (1976); *also Garner v. Carteret Cty. Dist. Attorney*, 2017 WL 9478520, at *2–3 (E.D.N.C. May 11, 2017), *report and recommendation adopted,* No. 5:16-CT-3227-D, 2017 WL 3017703 (E.D.N.C. July 17, 2017), *aff'd,* 704 Fed. Appx. 278 (4th Cir. 2017) ("Moreover, there is no federal constitutional right to be free from defamation or slander."). Thus, to plead a successful defamation case, Plaintiff must look to West Virginia law.

In West Virginia, allegations of libel or slander are prosecuted under the broad category of defamation. *Workman v. Kroger Ltd. Partnership I*, Case No. 5:06-cv-0446,

8

2007 WL 2984698, *4 (S.D.W. Va. Oct. 11, 2007) (citing *Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E.2d 391, 399 (W. Va. 1997)); *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W. Va. 2002). Defamation is a false written or oral statement that tends to "reflect shame, contumely, and disgrace" upon an individual. Syl. pt. 1, *Sprouse v. Clay Commc'n, Inc.,* 211 S.E.2d 674 (W. Va. 1975). To state a claim of defamation under West Virginia law, "a private individual must show (1) a defamatory statement; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) negligence, at a minimum, on the part of the publisher; and (6) resulting injury." *Tomblin v. WCHS-TV8,* 434 F. App'x 205, 216 (4th Cir. 2011) (citing *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (1983)). Here, Plaintiff is unable to state a *prima facie* case of defamation, because the allegedly defamatory statement is absolutely privileged.

Plaintiff identifies the "defamatory statement" as the check mark—made by Ms. Hetzer on the "Request for Separation Information" form provided by Workforce West Virginia's Unemployment Compensation Division—which indicated that Plaintiff was discharged from employment, along with the accompanying statement that his discharge was triggered by a denial of tenure by the Promotion and Tenure Committee. Workforce West Virginia is a State agency composed, in relevant part, of the Division of Unemployment Compensation. W. Va. Code § 21A-1-4(a)(1). The Commissioner of the Bureau of Employment Programs is the administrative head of Workforce West Virginia's Division of Unemployment and, as such, supervises the operations of the Division, including the processing of claims for unemployment compensation benefits. W. Va. Code § 21A-2-6.

"West Virginia's statutory scheme governing unemployment compensation contains the provision that '[n]o action for slander or libel, either criminal or civil, shall

9

be predicated upon information furnished by any employer or any employee to the commissioner in connection with the administration of any of the provisions of this chapter.'" *Thacker v. Peak*, 800 F. Supp. 372, 386 (S.D.W. Va. 1992) (quoting W. Va. Code § 21A–10–11). As the information provided by Ms. Hetzer was made in response to a request from Workforce West Virginia in connection with Plaintiff's claim for unemployment benefits, the communication is absolutely privileged under W. Va. Code § 21A–10–11. Accordingly, under the relevant statute, even if Ms. Hetzer's statement were false or maliciously made, Plaintiff cannot pursue a defamation claim based on that communication. *Id.*; *also Shawkey v. Lowe's Home Centers, Inc.*, No. 2:09-CV-01264, 2011 WL 1229784, at *8, n. 10 (S.D.W. Va. Mar. 30, 2011) (holding that § 21A–10–11 makes absolutely privileged information furnished by an employer in connection with a claim for unemployment benefits.).

Considering next the allegation of tortious interference against Hetzer, Felder, and Burriss, Plaintiff claims that these three defendants maliciously interfered with "prospective employments" by falsely stating that Marshall University had no employment record of Plaintiff. (ECF No. 173-1 at 33, 49-50). However, according to the documents referenced by Plaintiff and attached to the proposed amended complaint, the defendants did not make any such statement. Plaintiff hired Allison & Taylor, a professional reference company, to contact Marshall University and ask for an employment reference regarding Plaintiff. (ECF No. 173-6 at 1-3). When Allison & Taylor called, Ms. Burriss responded that Marshall University's policy was to only confirm job titles and dates of employment. Ms. Burriss attempted to locate the information on her computer, but was unable to retrieve the relevant information searching Marshall University's employee database using Plaintiff's name as the search term. Ms. Burriss

10

advised Allison & Taylor that she was having trouble finding the relevant records with the name provided, but stated that she would be able to search by the employee's social security number. Ms. Burriss suggested that if Allison & Taylor would call back with that information, she would search the database again using Plaintiff's social security number. (*Id.*). Nothing in the record supports the inference—let alone the conclusion—that any individual at Marshall University falsely represented to Allison & Taylor, or to any other person or entity seeking a reference related to Plaintiff, that Marshall University had no record of Plaintiff working there. Plaintiff never provided his social security number to Allison & Taylor; therefore, Allison & Taylor did not call Marshall University again and instead closed its file. (*Id.*).

In West Virginia, to establish *prima facie* proof of tortious interference in employment opportunities, a plaintiff must show:

(1) existence of a contractual or business relationship or expectancy;

(2) an intentional act of interference by a party outside that relationship or expectancy;

(3) proof that the interference caused the harm sustained; and

(4) damages.

*Ballengee v. CBS Broad., Inc.*, 331 F. Supp. 3d 533, 554 (S.D.W. Va. 2018) (citing *Tiernan v. Charleston Area Med. Ctr., Inc.*, 506 S.E.2d 578, 591–92 (W. Va. 1998)). "Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was

11

proper." *Id.*

As Defendants argue, even under the broadest and most liberal construction of the allegations in the proposed amended complaint, Plaintiff simply fails to allege sufficient facts to state a plausible claim of tortious interference. Plaintiff does not identify a single contractual or business relationship or expectancy that was dependent upon a reference obtained by Allison & Taylor, or from Marshall University. Plaintiff claims that he applied for numerous positions after the Allison & Taylor incident and did not receive any interviews; however, Plaintiff provides no factual connection between that lack of response and the alleged difficulty with getting a reference from Marshall University. Indeed, Plaintiff previously attributed this lack of response to the timing of his contract termination in relation to his denial of tenure, which he described as a "red flag" to prospective employers.

Furthermore, Plaintiff makes no showing that Ms. Burriss *intentionally* withheld reference information in order to interfere with Plaintiff's employment opportunities. The paperwork supplied by Plaintiff indicates that, to the contrary, Ms. Burriss attempted to comply with Allison & Taylor's request for information, but could not locate Plaintiff's files by searching his name in the computer database. Nevertheless, Ms. Burriss offered to search the database again using a different search term—Plaintiff's social security number. The only reason the search was not carried out was that Plaintiff refused to supply Allison & Taylor with his social security number. While Plaintiff argues that he should not have to supply a social security number to obtain an employment reference, once Ms. Burriss explained that she could not locate the responsive records in the database with just his name, Plaintiff had an obligation to take the next step if he truly wanted to make the reference information available to prospective employers.

12

The proposed amended complaint offers no concrete demonstrations of intentional interference or of an associated harm. The complaint suggests that Plaintiff's name was not entered properly into the computer database at some point during his employment with Marshall University, making it difficult, if not impossible, to find his records by only searching his name. If that scenario is accurate, then whoever erred when entering the data arguably was negligent. However, negligence does not constitute intentional interference, and Plaintiff has not alleged any facts to support the more extreme finding. Therefore, his claim of tortious interference does not rise above a speculative level and is subject to immediate dismissal.

For these reasons, the undersigned **FINDS** that the new causes of actions proposed in the third amended complaint cannot withstand a motion to dismiss, making them futile.

Plaintiff also proposes modifying a few of the existing causes of action. As previously stated, he wants (1) to add the words "maliciously" or "malicious" to all causes of action; (2) to add a factual allegation to Count 11 of the second amended complaint related to the grievance process; (3) to add to Count 11 that proposed defendants Felder, Hetzer, and Burriss and Defendant Marshall University made false statements about his employment; and (4) to join proposed defendant Cottrill to Count 11 on the basis that he "appears" to have played a role in appointing Mr. Hensley as the Level I grievance examiner. Given that there are no valid claims stated against them, the undersigned **FINDS** that proposed defendants Felder, Hetzer, and Burris should not be joined as defendants. The undersigned further **FINDS** that the facts regarding "false" statements should not be added to Count 11, as the statements are absolutely privileged as part of the unemployment compensation process; and the words "malicious" and "maliciously"

13

should not be randomly added to every count as Plaintiff fails to provide any specific factual grounds for doing so. With respect to proposed defendant Cottrill, the undersigned likewise **FINDS** no factual allegations that support his joinder as a defendant. Plaintiff's professed speculation that Mr. Cottrill "appears" to have play a role in the appointment of Mr. Hensley as the Level I examiner does not give rise to a constitutional violation. Furthermore, the attachment provided by Plaintiff indicates that his true motive in attempting to join Mr. Cottrill in the lawsuit is to express displeasure with Mr. Cottrill's decision to accept Mr. Hensley's recommendations in the grievance process. Once again, that letter simply does not supply a sufficient factual basis to state a constitutional violation under the Due Process Clause of the United States Constitution. As to the remaining factual allegation that Plaintiff seeks to add, he has already stated a due process cause of action in Count 11. He is not required to file a motion for leave to amend every time he thinks of another way to shore up his complaint.

Therefore, undersigned **FINDS** no justification under Fed. R. Civ. P 15 to grant Plaintiff leave to amend the complaint.

## V.     Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Plaintiff's Motion to Modify Amended Complaint and Join Defendants be **DENIED.** (ECF No. 173).

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (for the filing of objections) and three days (if this

document was received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:** February 27, 2019

Cheryl A. Eifert
United States Magistrate Judge