## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

WEI-PING ZENG,

        Plaintiff,

v.                                CIVIL ACTION NO. 3:17-3008

MARSHALL UNIVERSITY,
DR. JERMONE A. GILBERT,
DR. JOSEPH SHAPIRO,
DR. W. ELAINE HARDMAN,
DR. DONALD A. PRIMERANO,
DR. RICHARD EGLETON,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Plaintiff's Objection to the Proposed Findings and Recommendation ("PF&R") issued by the Honorable Cheryl A. Eifert on February 27, 2019. *PF&R*, ECF No. 199. Magistrate Judge Eifert issued the PF&R in response to Plaintiff's Motion to Modify Amended Complaint and Join Defendants. *Pl.'s Mot. to Mod. Compl.*, ECF No. 173. As explained below, the Court **ADOPTS** the Magistrate Judge's PF&R consistent with this Memorandum Opinion and Order. Accordingly, the Court **DENIES** Plaintiff's Motion to Modify Amended Complaint and Join Defendants.

## I. RELEVANT BACKGROUND

This action arises out of a dispute over the termination of Plaintiff Wei-Ping Zeng's employment with the Marshall University School of Medicine ("Marshall") on June 30, 2016. *Am. Compl.*, ECF No. 55, at 31. A full exposition of the factual background of this case is unnecessary

to resolve the narrow issues presented in Plaintiff's objection,[1] but a limited review of the procedural history leading up to his objection is warranted. By the time of Magistrate Judge Eifert's final discovery conference with the parties on January 8, 2019, over nineteen months had elapsed since Plaintiff had commenced his suit. *PF&R*, at 3. In that time, Plaintiff had already modified his complaint twice in order to join several individual defendants and allege new causes of action. *Id.* at 2. Despite these prior amendments, on January 11, 2019 Plaintiff filed a motion for leave to file a third amended complaint. *See Pl.'s Mot. to Mod. Compl.* Specifically, Plaintiff sought permission to add claims for defamation and tortious interference, join another set of individual defendants, and modify his existing causes of action by inserting new terms and allegations. *Id.* at 2–5.

Plaintiff bases his claims for defamation and tortious interference on identical factual predicates, pointing to three events in particular. First, he argues that his very discharge by Marshall on June 30, 2016 was defamatory and a tortious interference with subsequent employment opportunities. *Pl.'s Obj. to PF&R*, ECF No. 208, at 4. Second, he points to a "Request for Separation Information" form that Workforce West Virginia's Unemployment Compensation Division submitted to Ms. Katharine Hetzer in Marshall's human resources department. *Pl.'s Mot. to Mod. Compl.*, at 2. The form—sent to Marshall after Plaintiff began the process of claiming unemployment benefits—requires a prior employer to choose from three reasons for a claimant's departure: "Lack of Work," "Quit," and "Discharge." *See Ex. 29*, ECF No. 173-2. On July 12, 2016, Ms. Hetzer completed the form for Plaintiff. *Id.* She checked "Discharge," and noted that he was "Denied [t]enure by Promotion + Tenure Committee" where the form requests elaboration.

---

[1] This Court has extensively discussed the factual setting of this case in previous orders. *See*, *e.g.*, *Mem. Op. & Order*, ECF No. 49, at 2–8.

*Id.* Plaintiff alleges that selecting "Discharge" rather than "Lack of Work" constitutes defamation and tortious interference with employment opportunities. *Pl.'s Obj. to PF&R*, at 7. Third, Plaintiff points to a reference check he requested from the firm Allison & Taylor. *Pl.'s Mot. to Mod. Compl.*, at 3. At Plaintiff's request, Allison & Taylor—a professional reference company, not a potential employer—contacted Ms. Tracey Burriss at Marshall University and requested a reference for Plaintiff in July 2018. *Id.* Ms. Burriss was unable to locate Plaintiff's employment record using his name alone, and offered to search again using his social security number. *See Ex. 2*, ECF No. 187. Allison & Taylor subsequently notified Plaintiff that the University would require a full social security number to provide employment verification, and that "[t]his request is becoming more common than not." *Id.* Plaintiff declined to provide his social security number to Allison & Taylor. *See id.* Nevertheless, he argues that Marshall's failure to verify his employment based on his name alone is sufficient to constitute defamation and tortious interference. *Pl.'s Obj. to PF&R*, at 5–6.

Drawing upon these events, Plaintiff moves for leave to join Ms. Hetzer and Ms. Burriss as Defendants to Counts 11 (Plaintiff's due process claim) and 12 (Plaintiff's defamation and tortious interference claims) of his Proposed Amended Complaint. *Pl.'s Mot. to Mod. Compl.*, at 5. He also seeks to join Ms. Burriss' supervisor, Bruce Felder, to both counts, asserting that Ms. Burriss acted under his direction. *Id.* Finally, he proposes joining Marshall University General Counsel F. Layton Cottrill, Jr. to Count 11 on the basis that he might have played a role in appointing Plaintiff's Level I grievance examiner. *Id.*

## II. LEGAL STANDARD

In considering a party's objection to a PF&R, this Court will conduct a *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations "to which objection is made." 28 U.S.C. § 636(b)(1). It follows that this Court is not required to conduct a

review of factual and legal conclusions to which *no* objection is made. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Courts will uphold such findings and recommendations unless they are clearly erroneous. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). This Court is free to accept, reject, or modify the Magistrate Judge's findings or recommendations. *See* 28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, this Court will liberally construe his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The bounds of such a liberal construction are not unlimited, and this Court "may not construct the plaintiff's legal arguments for him." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In the context of an objection to a PF&R, "[g]eneral and conclusory" objections are insufficient to warrant *de novo* review. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) (reasoning that "failure to file a specific objection constitutes a waiver of the right to *de novo* review"). Instead, a party must identify specific errors in the Magistrate Judge's findings and recommendations. *See id.* Furthermore, objections that only reiterate earlier factual or legal assertions are not entitled to *de novo* review. *Reynolds v. Saad*, No. 1:17-124, 2018 WL 3374155, at *2 (N.D.W. Va. July 11, 2018).

Courts should "freely give leave" to amend a complaint "when justice so requires." F. R. Civ. P. 15(a)(2). "The law is well settled that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (internal quotations omitted). Only the third exception—futility—is applicable here. If proposed amendments cannot withstand a motion to dismiss, they are futile. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (affirming district court's denial of plaintiff's motion to amend "because the proposed amendments could not withstand a motion to

dismiss"). Put more colloquially: where a "proposed amendment is clearly insufficient or frivolous on its face," leave to amend will be denied. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

### III. DISCUSSION

Plaintiff presents several particularized objections to the Magistrate Judge's findings, each of which is discussed extensively below. However, as a preliminary matter the Court will address those points to which the Plaintiff does not present a cognizable objection. First, objections that simply reiterate factual assertions are not entitled to *de novo* review. *See Reynolds*, 2018 WL 3374155, at *2. In objecting to the Magistrate Judge's decision to deny joining new defendants, Plaintiff presents just such a recitation of well-worn allegations. *Pl.'s Obj. to PF&R*, at 8. Because such an objection is insufficient to warrant *de novo* review, the Court adopts the Magistrate Judge's findings and denies Plaintiff leave to join new defendants.

Moreover, Plaintiff does not address several of the Magistrate Judge's other conclusions. The Court will not undertake a *de novo* review of those findings to which a party does not object. *See Thomas*, 474 U.S. at 150. Here, Plaintiff has not objected to the denial of his motion to add new factual allegations related to the grievance process and certain allegedly false statements to Count 11 of his complaint. He likewise does not take issue with the Magistrate Judge's reasoning concerning the futility of adding Defendants Primerano, Shapiro, Gilbert, and Cottrill to his new tort claims. As Plaintiff does not object to these findings, this Court will adopt the Magistrate Judge's conclusions.

Plaintiff advances four concrete arguments in his objection: (a) that the Magistrate Judge failed to consider the Allison & Taylor reference check and his termination with reference to defamation; (b) that the Magistrate Judge failed to consider the Request for Separation Information

form and his termination with reference to tortious interference, and that she erroneously concluded that the reference check did not constitute tortious interference; (c) that the definition of "malice" justifies its inclusion in every count of his complaint without alleging any additional facts; and (d) that Marshall University is not protected by sovereign immunity.

## A. Defamation

In his objection, Plaintiff argues that the Magistrate Judge did not consider his discharge or his reference check in relation to his new claim for defamation. He is correct that the PF&R only addresses the Request for Separation Information form, and concedes that Ms. Hetzer's statement on the form is absolutely privileged under state law. *See Thacker v. Peak*, 800 F. Supp. 372, 386 (S.D.W. Va 1992). This Court will consider the remaining allegedly defamatory events in turn.

First, Plaintiff argues that his discharge from Marshall University in June 2016 was defamatory. *Pl.'s Obj. to PF&R*, at 4–5. Defamation is a state tort claim. *Dashields v. Robertson*, No. 99-1124, 2000 WL 564024, at *3 (4th Cir. May 10, 2000). Under West Virginia law, a private individual pursuing an actionable defamation claim must show "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). As Plaintiff notes, "[d]irect defamatory statements are not an absolute prerequisite to recovery . . . because defamation may also be accomplished through inference, innuendo, or insinuation." *Id.* at 77. Plaintiff's claim plainly fails to meet the threshold of direct defamation or defamatory innuendo, because both types of defamation still stem from a defamatory statement. *See id.* at 80 (discussing innuendo stemming from the publication of a photograph, which is a "well established" means of defamation). Here, Plaintiff argues that the

very act of terminating his employment was a defamatory statement in itself. No authority, in this Circuit or otherwise, suggests that merely terminating employment is a "statement" that may constitute defamation. Even assuming that Plaintiff had demonstrated the existence of a defamatory statement, his claim would still fail. He admits that his employment with Marshall University was terminated in June 2016; indeed, that termination forms the crux of his suit. *See Am. Compl.*, at 31. It follows that nothing about his termination was "false" because Plaintiff's employment was, in fact, terminated.

Second, Plaintiff alleges that Ms. Burriss' conversation with Allison & Taylor was defamatory. *Pl.'s Obj. to PF&R*, at 5–6. He objects to the PF&R and argues that Ms. Burriss had "effectively refus[ed]" to confirm his employment with Marshall University, implying that he "lied about his experience." *Id.* at 5. As noted earlier, defamatory statements need not be direct; instead, a statement can defame an individual through "inference, innuendo, or insinuation." *Crump*, 320 S.E.2d at 77. In order to prove defamation by implication, however, such an implication "must be present in the plain and natural meaning of the words." *Chapin v. Knight-Ridder Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). This standard is especially high for statements that are literally true, which must "affirmatively suggest that the author intends or endorses the [defamatory] inference." *Id.* at 1093. The record suggests that Ms. Burriss' statements did nothing of the sort; indeed, it appears she only requested to search for Plaintiff's employment record by social security number because she was unable to locate it by name. *See Ex. 2*, ECF No. 187. No matter the reason for Ms. Burriss' inability to locate the record—whether technological malfunction or simple human error—requesting a different means of searching for one's employment record is hardly a statement that suggests a defamatory inference or that Ms. Burriss intended such an inference. As

each of the three events that Plaintiff singles out as defamatory would be subject to dismissal, their addition to Plaintiff's Complaint would be futile.

### B. Tortious Interference

Turning next to Plaintiffs claims for tortious interference against Ms. Hetzer, Mr. Felder, and Ms. Burriss, the Court considers the same three events outlined above. Plaintiff claims that Defendants tortiously interfered with employment opportunities at other universities through his discharge, the Request for Separation Information form, and the Allison & Taylor reference check. *Pl.'s Obj. to PF&R*, at 6–7. Plaintiff points out that the PF&R only considers tortious interference as it relates to the reference check, and even then argues that the Magistrate Judge misunderstands the meaning of an expectancy. *Id.* This Court disagrees.

Like defamation, tortious interference with an employment opportunity is a state tort claim. *See Dashields*, 2000 WL 564024, at *3. Under West Virginia law, a showing of tortious interference requires "(1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." *Torbett v. Wheeling Dollar Sav. & Trust*, 314 S.E.2d 166, 173 (W. Va. 1983). Plaintiff fails to make a showing on any one of these elements, let alone all four. Rather than discuss each requirement in turn, this Court will focus on the lack of any identifiable contractual or business relationship or expectancy.

As a preliminary matter, Plaintiff does not allege the existence of any extant contract or business relationship with which Marshall interfered. Instead, he claims that "an expectancy of [an] employment relationship is created when a job applicant submits a job application." *Pl.'s Obj. to PF&R*, at 6. This is an assertion without merit, insofar as a "mere hope or attempt to obtain future employment, however well-founded . . . does not amount to the existence of a contractual

or business relationship or expectancy." *Shawkey v. Lowe's Home Ctrs., Inc.*, No. 2:09-cv-01264, 2011 WL 1229784, at *13 (S.D.W. Va. Mar. 30, 2011) (quoting *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008)) (internal quotations omitted). Plaintiff goes on to reference a cancelled interview in his objection, claiming that the prospective employer "might have" cancelled the interview "due to a bad reference from the defendants." *Pl.'s Obj. to PF&R*, at 7. Yet even "prospects for imminent employment" have been found insufficient to establish the existence of a business expectancy. *See Kerr v. Marshall Univ. Bd. of Governors*, No. 2:14-cv-12333, 2015 WL 1405537, at *13 (S.D.W. Va. Mar. 26, 2015). Without identifying a particular contractual or business expectancy with which Defendants could have interfered, no alleged instance of tortious interference will survive a motion to dismiss. It follows that the addition of tortious interference claims to Plaintiff's Complaint would be futile.

### C. Malice

Plaintiff also objects to the Magistrate Judge's decision to deny his motion to add "maliciously" to each count of his Complaint where it was not already present. *Pl.'s Obj. to PF&R*, at 8. Magistrate Judge Eifert based her decision to deny Plaintiff's motion on his failure "to provide any specific factual grounds" for including the term "malicious" or "maliciously." *PF&R*, at 13–14. In his objection, Plaintiff responds by citing a definition of malice in the context of Title VII. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) ("The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law."). This definition is inapposite to the specific factual shortcomings referenced in the PF&R.

As noted, a futile amendment is one that cannot survive a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 916–17 (4th Cir. 1995). Accordingly, an amendment is futile if it does not "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). In determining whether a claim is plausible, courts will consider facts and inferences alleged in the complaint in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Even so, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Put differently, a complaint will not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* Here, Plaintiff seeks to add the word "maliciously" to Counts 1, 4, 5, 6, 7, 8, 9, 10, and 11 of his Complaint. *See Mod. Am. Compl.*, ECF No. 173-1. He does not seek to add "maliciously" to Counts 2 and 3, where it already is included in his initial complaint. *Id.* The apparent randomness of these additions, coupled with a lack of new facts to support them, are precisely the type of "naked assertions devoid of further factual enhancement" that will not survive a motion to dismiss. *See Aschroft*, 556 U.S. at 678. Accordingly, their incorporation into Plaintiff's Complaint would be futile.

### D. Sovereign Immunity

Plaintiff once again stresses that, because he only seeks prospective relief, "Marshall University does not have sovereign immunity" with respect to his defamation and tortious interference claims. *Pl.'s Obj. to PF&R*, at 2. Defamation and tortious interference are both state law claims. *Dashields*, 2000 WL 564024, at *3. It is firmly established that *only* state officials fall within the prospective relief exception to the Eleventh Amendment's shield against state law claims. *Wei-Ping Zeng v. Marshall University*, 370 F. Supp. 3d 682, 690 (S.D.W. Va. 2019). Marshall University is not a state official, and is instead an arm of the state of West Virginia. *See Zimmeck v. Marshall Univ. Bd. of Governors*, 3:13-14743, 2013 WL 5700591 (S.D.W. Va. Oct. 18, 2013). As Plaintiff's new tort claims against Marshall University would be subject to immediate dismissal, leave to amend would be futile.

## IV. CONCLUSION

Based upon the preceding analysis, the Court **ADOPTS** Magistrate Judge Eifert's PF&R (ECF No. 199) consistent with this Memorandum Opinion and Order and **DENIES** Plaintiff's Motion to Modify Amended Complaint and Join Defendants (ECF No. 173).

The Court **DIRECTS** the Clerk to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER:        August 22, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE